THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

MATTHEW WARNER,                  :    HONORABLE JEROME B. SIMANDLE
                                 :
              Plaintiff,          :
                                 :    Civil No. 09-6095(JBS/JS)
         v.                      :
                                 :
TOWNSHIP OF SOUTH HARRISON, et   :
al.,                             :    **OPINION**
                                 :
              Defendants.         :
                                 :

---

APPEARANCES:

Surinder K. Aggarwal, Esq.
William H. Buckman, Esq.
THE WILLIAM H. BUCKMAN LAW FIRM
Moorestown Office Center
110 Marter Ave, Suite 209
Moorestown, NJ 08057
     Counsel for Plaintiff Matthew Warner

A. Michael Barker, Esq.
BARKER, SCOTT & GELFAND
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221
     Counsel for Defendants Township of South Harrison, Colleen
     Bianco, Gary Spinner, James McCall, and Warren Mabey

Brian V. Lucianna, Esq.
BRIAN V. LUCIANNA, P.C.
600 South White Horse Pike
Audubon, NJ 08106
     Counsel for Defendant Jeannine Campbell

**SIMANDLE**, District Judge:

Plaintiff Matthew Warner has brought suit in response to accusations and an investigation initiated by South Harrison Township officials into Plaintiff's allegedly inappropriate access of the Township's computer systems.  He seeks to pursue claims under Section 7 of the Privacy Act, 5 U.S.C. § 552a, and under 42 U.S.C. § 1983 for violations of his constitutional rights to freedom of association, privacy, and due process, as well as claims under the New Jersey Constitution.  Presently before the Court are motions to dismiss brought by Defendants Township of South Harrison, Colleen Bianco, Gary Spinner, James McCall, and Warren Mabey [Docket Item 3], Defendant Jeannine Campbell[1] [Docket Item 8], and Plaintiff's cross-motion for leave to amend his complaint [Docket Item 11].  For the reasons expressed below, the Court will grant Defendants' motions to dismiss, but also grant in part and deny in part Plaintiff's motion for leave to amend his complaint.  Plaintiff may continue to pursue his privacy and procedural due process claims under both the federal and state constitutions.

---

[1] Defendant Campbell's name is incorrectly spelled "Jeanine" on the docket.  Plaintiff's proposed amended complaint includes this correction.

2

I.    **BACKGROUND**

A.    **Facts**[2]

Plaintiff is a resident of South Harrison Township, New Jersey ("the Township"), where until 2009 he served as a member of the Township's Planning and Zoning Board ("the Board"). (Am. Compl. ¶ 3.)  Plaintiff is a Democrat and was, at the time of these events, affiliated with Charles Tyson and Bob Campbell, the Mayor and Deputy Mayor of South Harrison.  (Id. ¶¶ 3, 13.)  The Township has a Non-Executive Committee ("the Committee") form of government with five elected committeemen, who then appoint the Mayor and Deputy Mayor.  (Id. ¶ 14.)  Members of the Planning and Zoning Board are nominated by the Mayor and approved by vote of the Committee.  (Id. ¶ 11.)  Generally, members of the Board are asked to renew their terms.  (Id. ¶ 12.)  In October 2007 John Coleman, as Democratic campaign manager, considered having Plaintiff campaign for a position on the Committee.  (Id. ¶ 15.)

In addition to Plaintiff's service on the Board, Plaintiff is a computer professional.  (Id. ¶ 10.)  In April 2008, the Committee authorized Plaintiff to review the Township's information technology system, including their data storage,

---

[2] For the purposes of the two pending motions, the Court will take as true the facts as stated in Plaintiff's proposed amended complaint.  As will be discussed below, in large part Plaintiff does not oppose Defendants' motions to dismiss his initial complaint (with the exception of his Privacy Act claims) and instead relies on his proposed amended complaint to support his federal and state constitutional claims.

hardware, software, and disaster recovery requirements. (Id. ¶¶ 16-17.) At some point thereafter, Defendant Colleen Bianco, the Township Administrator, accused Plaintiff of inappropriately accessing the Township's computer system in e-mails she sent to Committee members, township staff, and Township police officers. (Id. ¶¶ 6, 19.) She later erased evidence of these e-mails from her computer. (Id.) In response, the Township Police Department, under the direction of Defendant Police Chief Warren Mabey, began an investigation of Plaintiff, during which the County Prosecutors' Office, the New Jersey State Police, and the Federal Bureau of Investigations interrogated Plaintiff for approximately eight hours. (Id. ¶¶ 19-21.)

These allegations were eventually made public. On July 20, 2008, the Township informed Township residents and the press that a member of the Board had "hacked" into the Township's computer system and that it was appointing a panel to investigate the matter, even though the Township had authorized Plaintiff to access the computer system. (Id. ¶ 22.) The investigatory committee, without true subpoena power, subpoenaed Plaintiff's testimony and the report from the state police regarding Plaintiff's initial interrogation. (Id. ¶¶ 24, 26-27.) The Township informed the media that a second panel would also probe the "hacking." (Id. ¶ 25.) Defendant Mabey facilitated the delivery of the state police report, without redacting any

4

information, to the Committee.  (Id. ¶ 28.)  The police report indicated that Plaintiff had done nothing wrong, yet the investigative committee issued a report finding Plaintiff guilty of wrongdoing.  (Id. ¶ 29.)  The Township publically disseminated the report, along with police reports that contained Plaintiff's name, driver's license number, date of birth, address, telephone number, and social security number.  (Id. ¶¶ 32-25.)  Defendants Jeannine Campbell, an agent of the Committee, and Bianco helped to disseminate these reports, while Defendants Gary Spinner and James McCall, both Committee members, read the report in public. (Id. ¶¶ 5, 34-35.)  Spinner and McCall are both Republicans. (Id. ¶¶ 7-8.)  Campbell retains a copy of the report and continues to share it with members of the public, while Robert Diaz, a Township council person, continues to share the report and police reports with the public.  (Id. ¶¶ 36-37.)

After Defendants published the investigative police report, Plaintiff was asked not to renew his term on the Planning and Zoning Board.  (Id. ¶ 38.)  The public dissemination of the investigative police report "has resulted in damage to [Plaintiff's] name and reputation, and has caused Plaintiff to experience hardship and difficulty in maintaining employment." (Id. ¶ 39.)

**B.    Procedural History**

On December 2, 2009, Plaintiff brought suit against Defendants seeking relief under Section 7 of the Privacy Act, 5 U.S.C. § 552a, and under 42 U.S.C. § 1983 for violations of his constitutional rights to freedom of association, privacy, and due process, as well as claims under the New Jersey Constitution. Shortly thereafter, all Defendants moved to dismiss, with Defendant Campbell filing a separate motion.  In response, Plaintiff submitted an opposition where he objected to the dismissal of his Privacy Act claims and then argued that he should be granted leave to amend his complaint to include allegations to support his other constitutional claims.  On that same day Plaintiff submitted a motion to amend his complaint, which included a proposed amended complaint.  Briefing is now complete as to all motions.

**II. DISCUSSION**

**A.    Motion to Dismiss**

As noted above, Plaintiff essentially does not oppose much of Defendants' motions to dismiss, instead seeking leave to amend his complaint to include facts supporting his federal and state constitutional claims.  Further, there are few facts in Plaintiff's initial complaint to support these constitutional claims.  The Court will grant Defendants' motions to dismiss these unsupported constitutional claims as alleged in Plaintiff's

initial complaint without further discussion.  Therefore, the
Court will address only Plaintiff's Privacy Act claims on this
motion to dismiss and then turn to his proposed amended complaint
to determine the sufficiency of his constitutional allegations.

>    1.   <u>Standard of Review</u>

In deciding the Defendants' motions to dismiss pursuant to
Rule 12(b)(6), the Court must "accept all factual allegations as
true, construe the complaint in the light most favorable to the
plaintiff, and determine whether, under any reasonable reading of
the complaint, the plaintiff may be entitled to relief."
<u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008)
(quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d
Cir. 2002)).  Thus, "to survive a motion to dismiss, a complaint
must contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
<u>Ashcroft v. Iqbal</u>, ---U.S. ---, 129 S. Ct. 1937, 1949 (2009);
<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)
(quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim
> should be separated.   The District Court must
> accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.
> [Iqbal, 129 S.Ct. at 1950.]   Second, a District
> Court must then determine whether the facts alleged
> in the complaint are sufficient to show that the
> plaintiff has a "plausible claim for relief." Id.
> [] In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief. A
> complaint has to "show" such an entitlement with
> its facts.   See Phillips, 515 F.3d at 234-35.

Fowler, 578 F.3d at 210-11.

"In deciding motions to dismiss pursuant to Rule 12(b)(6),
courts generally consider only the allegations in the complaint,
exhibits attached to the complaint, matters of public record, and
documents that form the basis of a claim."   Lum v. Bank of
America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

    2.   The Privacy Act

Plaintiff seeks relief under Section 7 of the Privacy Act of
1974, 5 U.S.C. § 552a (note),[3] Pub. L. 93-579, § 7, 88 Stat.
1896, 1909 (1974).   Section 7 makes it "unlawful for any Federal,
State or local government agency to deny to any individual any
right, benefit, or privilege provided by law because of such
individual's refusal to disclose his social security account
number."   5 U.S.C. § 552a(note).   It further requires any such

---

[3] Section 7 was not independently codified and instead can
be found in the notes to the codified Section 3.   Schwier v. Cox,
340 F.3d 1284, 1288 (11th Cir. 2003).

agency "which requests an individual to disclose his social
security account number" to "inform that individual whether that
disclosure is mandatory or voluntary, by what statutory or other
authority such number is solicited, and what uses will be made of
it." Id. Section 7 does not, however, prohibit disclosure of
confidential records. That prohibition is provided in Section 3
of the Privacy Act, § 552a(b). All parties agree that Section 3
applies only to federal government agencies. See, e.g., Schwier
v. Cox, 340 F.3d 1284, 1287-88 (11th Cir. 2003) (Section 3 of
Privacy Act applies only to federal agencies and sets forth an
individual's right to records of federal agencies and right to be
protected from disclosure of records by federal agencies).
Defendants argue that Plaintiff cannot state a claim under
Section 7(a) because he does not allege that he was denied any
benefit for refusing to provide his social security number.
Plaintiff does not dispute this point, but responds that the
Committee did not inform him of whether disclosure was mandatory,
on what legal basis his social security number was obtained, or
how it would be used, as required by Section 7(b).

Assuming that there is a private cause of action under
Section 7(b), Plaintiff has failed to state a claim under the
Privacy Act. As alleged, the Township did not ask Plaintiff to
disclose his social security number. Instead, it sought a copy
of the investigation report from the New Jersey state police,

which Defendants received without Plaintiff's social security number redacted.  The complaint does not plausibly suggest that the Committee sought Plaintiff's social security number, only that they sought the investigation report.[4]  Moreover, Plaintiff does not allege that the New Jersey state police obtained his social security number in violation of Section 7(b).  The Court cannot stretch the language of Section 7(b) to require disclosures whenever one unit of government seeks records from other government agencies that might, if not properly redacted, contain social security numbers.

Plaintiff's real complaint is Defendants' wide-spread, and apparently unjustifiable, dissemination of his social security

---

[4] The relevant allegations read, in total, as follows:

26.   Further, the first panel "subpoenaed" the report of the state police from Plaintiff's interrogation in April 2008.

27.   A Township committee has no subpoena power.

28.   Nevertheless, without redaction, Defendant Mabey saw to it that the Township committee received the police investigative report containing Plaintiff's personal and private information.

29.   In response to its "subpoena," the first investigative report received from law enforcement indicated that Plaintiff had done nothing wrong.

30.   The report of law enforcement included Plaintiff's social security number, date of birth, address, telephone number, and driver's license number.

(Am. Compl. ¶¶ 26-30.)_

10

number to the public.  That claim, however, is not covered under Section 7(b), but instead by Section 3.  See Ferm v. United States Trustee, 194 F.3d 954, 961-62 (9th Cir. 1999) ("Section 7(b) has no bearing on the public disclosure of SSNs by the government . . . ."); Stollenwerk v. Miller, No. 04-5510, 2006 U.S. Dist. LEXIS 7048, at *16 n.15 (E.D. Pa. Feb. 24, 2006) ("Section 7 arguably restricts only the collection of Social Security numbers, not the dissemination of a person's Social Security number, which is addressed in section 3.").  Section 3, however, does not apply to state or local agencies, such as Defendants.  See Schwier, 340 F.3d at 1287-88.  Therefore, because Plaintiff has not alleged that Defendants asked him to disclose his social security number, and because his charges of widespread dissemination of his social security number by local agencies is not cognizable under the Privacy Act, the Court will grant Defendants' motions to dismiss Plaintiff's Privacy Act claim.

**B.  Motion to Amend**

In response to Defendants' motions to dismiss, Plaintiff has moved to amend his complaint to add additional allegations in support of his constitutional claims.  Defendants oppose, arguing that amendment would be futile because even as amended Plaintiff fails to state any claims for which relief may be granted.  The Court finds, and will explain further below, that Plaintiff has

11

adequately alleged violations of his right to privacy and due process under the federal and New Jersey constitutions, but has failed to state a claim for violations of his right to free association under either constitution or under the Privacy Act.[5] The Court further finds that Plaintiff has sufficiently alleged municipal liability for the purposes of § 1983.

      1.   Standard of Review

Rule 15(a)(2), Fed. R. Civ. P., provides that leave to amend should be freely given when justice so requires.  The decision to permit amendment is discretionary.  Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 144 n. 10 (3d Cir. 2009).  Among the legitimate reasons to deny a motion is that the amendment would be futile.  Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).  Futility is determined by the standard of legal sufficiency set forth in Rule 12(b)(6), Fed. R. Civ. P.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  Accordingly, an amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted.  Id.  As previously discussed, see Part II.A.1, a complaint sufficiently states a claim when is alleges facts about the conduct of each defendant giving rise to liability.  Twombly,

---

[5] Plaintiff does not include any material amendments to his Privacy Act claims.  The Court will therefore deny leave to include this claim in Plaintiff's proposed amended complaint for the same reasons that the Court found Plaintiff had failed to state a claim pursuant to Rule 12(b)(6).  Part II.A.2, supra.

550 U.S. at 555.  These factual allegations must present a plausible basis for relief (i.e. something more than the mere possibility of legal misconduct).  See Iqbal, 129 S.Ct. at 1951.

    2.  Freedom of Association

Plaintiff, in support of his motion to amend, argues that Defendants purposefully spread false charges of computer "hacking" and then used these charges as a means to prevent him from renewing his term on the Planning and Zoning Board because of Plaintiff's political affiliations with the Mayor and Deputy Mayor.  This conduct, Plaintiff argues, violated his rights of association under the First Amendment.

> To succeed on a discrimination claim based on political affiliation, a public employee must make a prima facie showing that "(1) that the employee works for a public employer in a position that does not require a political affiliation, (2) that the employee maintained a political affiliation, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision."  Hill v. Borough of Kutztown, 455 F.3d 225, 243 (3d Cir. 2006).

Smith v. City of Allentown, 589 F.3d 684, 692-693 (3d Cir. 2009).

The present case may not fit perfectly into this scheme, because it is unclear whether Plaintiff was in fact a public "employee" and whether the alleged misconduct here constitutes an "adverse employment decision."  Regardless, it is clear that to sufficiently allege political discrimination, Plaintiff must sufficiently allege that his political affiliation was "a substantial or motivating fact" in the adverse conduct.

Plaintiff has failed to make such a pleading.  Instead, Plaintiff has simply alleged that he was a Democrat affiliated with the Mayor and Deputy Mayor and that Defendants accused him of misconduct despite evidence to the contrary.  He does not allege that Defendants made these allegations because of Plaintiff's political affiliations, nor does he allege any facts that make such a motive plausible.  In fact, from the face of the proposed amended complaint the Court cannot discern why the various defendants, who include members of the Committee and the Chief of Police, some of whom are Republican but some of whom are not identified with any political party, but none of whom are alleged to have any problems with either the Mayor or the Deputy Mayor, would target Plaintiff because of his relationship with those men.  It is simply not enough for Plaintiff to allege that he had political affiliations and that Defendants engaged in misconduct.  Without any allegations to show that those political affiliations were a "substantial or motivating factor" for that misconduct, Plaintiff cannot state a claim for political discrimination.  Therefore amendment would be futile, as presently framed in the proposed amended complaint.[6]

---

[6] If Plaintiff believes that he is able to allege that he was an "employee" who suffered an "adverse employment decision" motivated by his political affiliation, and that such a pleading would satisfy counsel's obligations under Rule 11, Fed. R. Civ. P., then Plaintiff is free to seek leave to file a second amended complaint promptly.

14

Moreover, because Plaintiff has failed to allege that his political association was a cause of Defendants' misconduct, or that his associational rights were in any way harmed by Defendants, the Court finds that Plaintiff has not stated a claim under the New Jersey Constitution and amendment to include this claim would similarly be futile.

      3.   Right to Privacy

Next Plaintiff argues that he should be permitted to amend his complaint to allege that Defendants violated his constitutional right to privacy by widely disseminating the police reports which included Plaintiff's name, address, social security number, driver's license number, address, date of birth, and telephone number.  While the Constitution does not expressly protect a right to privacy, and the Supreme Court has not found such a generalized right, the Court has recognized "zones of privacy" in the various amendments to the Constitution.  C. N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 178 (3d Cir. 2005).  These zones protect two types of privacy interests: "'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'"  Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000) (quoting Whalen v. Roe, 429 U.S. 589, 599-600, (1977)).

It is the first type of privacy -- informational privacy -- that Plaintiff relies upon.  "'The right not to have intimate facts concerning one's life disclosed without one's consent' is 'a venerable right whose constitutional significance we have recognized in the past.'" C.N., 430 F.3d at 179 (quoting Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir. 1999)).  Analysis of a privacy claim requires two steps.  First the Court must determine whether the information is entitled to any privacy protection.  Id.

> In determining whether information is entitled to privacy protection, [the Third Circuit has] looked at whether it is within an individual's reasonable expectations of confidentiality.  The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny.

Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112-113 (3d Cir. 1987).  If a privacy interest is implicated, then the Court must weigh the various competing interests at issue and decide whether the disclosure was justified.  C.N., 430 F.3d at 179-80.

> The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

16

United States v. Westinghouse Electric Corp., 638 F.2d 570, 578
(3d Cir. 1980); see C.N., 430 F.3d at 180.

    The Court will therefore begin by looking to the privacy
interests, if any, implicated by the disclosure of the police
report and the detailed identifying information.  With regards to
the substance of the police report and the related investigation,
it is well-settled "that criminal records, including police
reports, indictments, guilty verdicts, and guilty pleas, are
inherently public -- not private -- documents and are thus beyond
the purview of the Due Process Clause."  Nunez v. Pachman, 578
F.3d 228, 233 (3d Cir. 2009); Scheetz v. The Morning Call, 946
F.2d 202, 207 (3d Cir. 1991) (no privacy interest in police
report documenting incident of domestic violence, though report
never led to formal charges); see Paul P. by Laura L. v.
Verniero, 170 F.3d 396, 403 (3d Cir. 1999) ("[R]ecords of
criminal convictions and pending criminal charges are by
definition public, and therefore not protected.") (internal
citations omitted).  Therefore, Plaintiff cannot state a claim
for intrusion on his right to privacy based solely on the
substantive information regarding the police investigation that
was disclosed in the police reports.

    The Court finds, however, that Plaintiff's privacy interests
are implicated in the disclosure of his home address along with

17

all other detailed identifying information.[7]  The Third Circuit

has recognized that a person has at least some protectable

privacy interest in his home address.  <u>Paul P.</u>, 170 F.3d at 404.

In examining a challenge to the disclosure elements of Megan's

Law, the appeals court found:

> We are not insensitive to the argument that notification
> implicates plaintiffs' privacy interest by disclosing
> their home addresses.  The compilation of home addresses
> in widely available telephone directories might suggest
> a consensus that these addresses are not considered
> private were it not for the fact that a significant
> number of persons, ranging from public officials and
> performers to just ordinary folk, choose to list their
> telephones privately, because they regard their home
> addresses to be private information.  Indeed, their view
> is supported by decisions holding that home addresses are
> entitled to privacy under FOIA, which exempts from
> disclosure personal files "the disclosure of which would
> constitute a clearly unwarranted invasion of personal
> privacy." 5 U.S.C. § 552(b)(6). . . .
> Plaintiffs' primary argument receives further support
> from the New Jersey Supreme Court holding, relying on
> FOIA cases, that "the fact that plaintiff's home address
> may be publicly available" aside, privacy interests were
> implicated by the disclosure of the home address along
> with the other information. [<u>Doe v. Poritz</u>, 662 A.2d 367,
> 409 (N.J. 1995)].

<u>Id.</u>  The <u>Paul P.</u> court ultimately agreed that persons "'have some

nontrivial privacy interest in nondisclosure'" in their home

addresses.  <u>Id.</u> (quoting <u>United States Dep't of Def. v. Fed.

Labor Relations Auth.</u>, 510 U.S. 487, 501 (1994)).  Therefore,

while the Third Circuit in an unpublished opinion has suggested

---

[7] The Court rejects any notion that merely because this
information was included in a police report it loses its privacy
interests.

that a person has no privacy interest in their social security number alone, McCauley v. Computer Aid, Inc., 242 F. App'x 810, 813 (3d Cir. 2007) ("Requiring disclosure of a social security number does not so threaten the sanctity of individual privacy as to require constitutional protection."),[8] the Court finds that Plaintiff has adequately alleged that the disclosure of his home address, along with sensitive identifying information including his Social Security number, implicated his privacy interests.

Having found that Plaintiff has alleged a privacy interest, the Court quickly concludes that he has sufficiently alleged that the disclosure of this private information was unjustified. As alleged, Defendants publicized Plaintiff's home address and other identifying information without any purpose. There being allegedly no public interest or other justification for disclosing this information, the Court finds that Plaintiff has stated a claim for violation of his federal constitutional right

_____

[8] The Court observes that the Third Circuit has acknowledged in the context of the privacy exclusion to the Freedom of Information Act ("FOIA") that "'the extensive use of Social Security numbers as universal identifiers in both the public and private sectors is one of the most serious manifestations of privacy concerns in the nation.'" Sheet Metal Workers Int'l Ass'n v. U.S. Dep't of Veterans Affairs, 135 F.3d 891, 898-899 (3d Cir. 1998) (quoting Int'l Bhd. of Elec. Workers v. U.S. Dep't of Hous. and Urban Dev., 852 F.2d 87, 89 (3d Cir. 1988)). The Third Circuit, at various times, has both relied upon FOIA case law for determining constitutional privacy interests, Paul P., 170 F.3d at 404 and Westinghouse, 638 F.2d at 577, and refused to rely upon FOIA case law for that purpose, Scheetz, 946 F.2d at 206-07.

to privacy.  Because the right to privacy is broader under the
New Jersey Constitution, Nunez v. Pachman, No. A-1851-08T3, 2009
N.J. Super. Unpub. LEXIS 3160 (N.J. Super. Ct. App. Div. Nov. 29,
2009), Plaintiff has similarly stated a claim under the state
constitution.[9]  Amendment to include his claims based on the
violation of his constitutional right to privacy would not be
futile and shall be allowed.

　　　　4.　Due Process

　　　Finally, Plaintiff seeks to pursue a claim that he was
deprived of his protectable liberty interest in his reputation
without sufficient process.  Specifically, he alleges that
Defendants falsely and publicly accused him of unauthorized
access to the Township's computer system and that he was not
asked to renew his position on the Planning and Zoning Board as a
result.  While "reputation alone is not an interest protected by
the Due Process Clause," a plaintiff may make out a due process
claim for deprivation of a liberty interest in reputation if the
plaintiff shows "a stigma to his reputation plus deprivation of
some additional right or interest."  Hill v. Borough of Kutztown,

---

[9] The Court recognizes that at some point it may be
necessary to more concretely define the scope of the right to
privacy under the New Jersey Constitution.  None of the parties,
however, have addressed the precise boundaries of the New Jersey
right to privacy, instead relying almost entirely on their
arguments addressing the federal constitution.  Without the
assistance of the adversarial process and it being unnecessary at
this stage, the Court declines to further delineate Plaintiff's
privacy claim under the New Jersey Constitution.

455 F.3d 225, 236 (3d Cir. 2006) (citing <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976)) (emphasis in original).  Sometimes referred to as the "stigma-plus" test, in the public employment context the "stigma" is the creation and dissemination of a false and defamatory impression  and the "plus" is generally termination. <u>Id.</u>  Where a plaintiff shows "stigma-plus," he is entitled to a name-clearing hearing.  <u>Id.</u>

     Plaintiff has adequately alleged "stigma," because he has alleged that stigmatizing statements (1) were made publicly and (2) were false.  <u>See id.</u>  Plaintiff alleges that Defendants publically, both through the media and through public readings, accused Plaintiff of potentially criminal misconduct in accessing the Township's computer system.  Plaintiff further alleges that these accusations were false, because the Township had authorized him to access the computer system.  The accusations, according to Plaintiff, damaged his reputation, as he is a computer professional.  The allegations are sufficient to show stigma.

     Plaintiff has similarly adequately alleged the "plus."  He alleges that he was not asked to renew his position on the Board because of Defendants' defamatory accusations.  It is clear from the proposed amended complaint that Plaintiff had no property interest in his position on the Board, because he did not have a "legitimate entitlement to continued employment," <u>Elmore v. Cleary</u>, 399 F.3d 279, 282 (3d Cir. 2005), as Plaintiff

21

acknowledges that a Board member is "generally" asked to "renew his/her term."  Nonetheless, a property interest in continued employment is not required to satisfy the "plus" element of Plaintiff's due process claim.  "[A] public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a  property interest in the job he lost." Hill, 455 F.3d at 238.  Plaintiff has adequately alleged that he lost his position on the Board as a result of Defendants' stigmatizing statements.[10]  Moreover, Plaintiff did not receive the process that was due -- a name-clearing hearing -- and so has stated a plausible claim for deprivation of due process under both the federal and New Jersey constitutions.[11]  Amendments to include these claims will be permitted.  The Court, in permitting the complaint to be amended, makes no determination of the merits, if any, of Plaintiff's allegations.

---

[10] It may be that Plaintiff's loss of his Board position is not sufficient to constitute the necessary "plus" element.  See Versarge v. Twp. of Clinton, 984 F.2d 1359, 1371 (3d Cir. 1993) (loss of voluntary position does not constitute loss of an interest sufficient to show deprivation of due process claim based on harm to reputation).  Nevertheless, it is plausible, based on Plaintiff's allegations, that the Board membership involved a sufficiently protected interest.  This question will be better resolved on a motion for summary judgment.

[11] Again, without any guidance from Plaintiff and little guidance from Defendants, the Court will not unnecessarily define the scope of procedural due process rights under the New Jersey Constitution.

5.   Municipal Liability under § 1983

Plaintiff seeks to hold the Township liable under § 1983 for the misconduct alleged in his proposed amended complaint.  It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978)).  As a consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694; Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion).

One circumstance in which municipal liability is appropriate "occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003).  "In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, and (2)

23

whether the official's authority to make policy in that area is final and unreviewable." Hill, 455 F.3d at 245 (internal citations omitted).

In this case, while Plaintiff alleges generally that the Township "failed to train, supervise, and/or discipline the individual defendants so as to prevent them from unlawfully depriving citizens of their constitutional rights, and particularly Plaintiff . . ." (Am. Compl. ¶ 49), his proposed amended complaint includes allegations that the Committee, the governing body of the Township, itself violated Plaintiff's rights by broadcasting its false allegations against Defendant and disseminating Plaintiff's private information.  (Am. Compl. ¶¶ 22, 25, 34.)  Therefore it is not necessary for Plaintiff to allege an additional unconstitutional policy or custom, where he has alleged that the municipal policymakers themselves violated federal law.  See Natale, 318 F.3d at 584.  The Court finds that Plaintiff's proposed amended complaint states sufficient facts, if proved to the fact finder, to hold the Township liable and therefore the amendment would not be futile.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss and grant in part and deny in part Plaintiff's motion to amend his complaint.  Plaintiff may amend his complaint to pursue his privacy and procedural due process claims under

both the federal and state constitutions.  Plaintiff's amended
complaint, deleting the disallowed counts, shall be filed within
fourteen (14) days.  The accompanying Order shall be entered.


**July 26, 2010**                    **_s/ Jerome B. Simandle_**
Date                                 JEROME B. SIMANDLE
                                     United States District Judge

25