IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MATTHEW WARNER, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 09-6095 (JBS/JS) |
| v. | : | |
| TOWNSHIP OF SOUTH HARRISON, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Surinder K. Aggarwal, Esq.
William H. Buckman, Esq.
THE WILLIAM H. BUCKMAN LAW FIRM
Moorestown Office Center
110 Marter Ave, Suite 209
Moorestown, NJ 08057
    Attorneys for Plaintiff Matthew Warner

A. Michael Barker, Esq.
Todd J. Gelfand, Esq.
BARKER SCOTT & GELFAND
210 New Road
Linwood, NJ 08221
    Attorneys for Defendants Township of South Harrison, Colleen
    Bianco, Gary Spinner, James McCall and Warren Mabey

Brian Victor Lucianna, Esq.
BRIAN V. LUCIANNA, P.C.
600 South White Horse Pike
Audubon, NJ 08106
    Attorney for Defendant Jeannine Campbell

**SIMANDLE**, Chief Judge:

**I.  INTRODUCTION**

        This matter is before the Court on the motion of Defendants

Colleen Bianco, Warren Mabey, James McCall, Gary Spinner and

Township of South Harrison (collectively the "Defendants") for summary judgment. [Docket Item 38.]  Plaintiff Matthew Warner filed opposition.  [Docket Item 44.]  For the reasons stated herein, the court will grant in part and deny in part Defendants' motion for summary judgment.

## II.  BACKGROUND

### A.  Statement of the Facts and Procedural History

The instant action arises out of an incident on April 16, 2008 when Plaintiff Matthew Warner ("Plaintiff") performed a port scan on the Township of South Harrison's computer network at the request of Deputy Mayor Robert Campbell.  Plaintiff is a computer IT professional and served as a member on the Township Planning and Zoning Board in 2008.  In addition, as a result of his IT background, the Plaintiff was appointed to the Resident Task Force in 2007 by the Township Committee.  The purpose of the Resident Task Force was "to review the needs of the Township regarding IT architecture, data storage, hardware, software and disaster recovery requirements."[1]  (Pl.'s Ex. A, Minutes of the Township Committee meeting held on June 27, 2007.)

On April 16, 2008, Deputy Mayor Campbell invited the Plaintiff to attend the Township Committee meeting that night to discuss the Township's needs for IT services and asked the

---

[1] While the Township Committee moved to proceed with the establishment of the Resident Task Force, the Resident Task Force was never officially formed by written resolution.

Plaintiff to run a port scan on the Township network prior to the meeting to assess the security of the Township's computers. (Defs.' Ex. 3, Deposition of Matthew Warner, February 22, 2011 ("Warner Dep.") at 102: 25-103:9; 134:12-134:18).  The Plaintiff agreed and on April 16, 2008, Plaintiff entered an open door to the South Harrison Township Clerk's Office during a closed session part of the Township Committee meeting.  He unplugged the Cat 5 cable from a computer and inserted it into his personal laptop in an effort to obtain an IP address to connect to the internet and check his company email.  (Warner Dep. at 53:1-4; 58:16-23; 61:17-20; 62:17-19; 69:5-9.)  When checking his email, Plaintiff conducted the port scan which had been requested by Deputy Mayor Campbell.  (Warner Dep. at 70:24-71:1-9.)  During the network scan, Plaintiff observed open ports that were susceptible to viruses.  Id.

While Plaintiff was in the Clerk's Office, Deputy Clerk Celeste Keen discovered the Plaintiff in the office, shutting down his computer.  (Warner Dep. at 74:10-25.)  The Plaintiff then exited the building and met with Deputy Mayor Campbell in the parking lot and advised Campbell that he had run a port scan and that what he had seen was "ugly."  (Warner Dep. at 75:23-76:8.)

After the closed session meeting on April 16, 2008, the Deputy Clerk Celeste Keen relayed to the Township Administrator

Colleen Bianco ("Bianco") that she had observed the Plaintiff
unattended in the Clerk's office and that the Plaintiff was
connected to the computer network.  (Defs.' Ex. 7, Deposition of
Colleen Bianco, March 16, 2011 ("Bianco Dep.") at 42:17-43:7.)
The next morning on April 17, 2008, Bianco circulated an e-mail
to the Township Committee members and administrative employees of
the Township, as well as Police Chief Warren Mabey, about the
situation. (Defs. Ex. 8.)

Aside from Deputy Mayor Campbell, other members of the
Township Committee and Township Administrator Bianco did not know
that the Plaintiff was authorized to access the Township computer
network and were alarmed to find the Plaintiff using the computer
in the Clerk's office unsupervised.  (Defs.' Ex. 9, Emails from
Committee Members, S Harrison, 14-27).

Bianco contacted members of the Township Committee as well
as Chief of Police Warren Mabey ("Mabey") to determine why the
Plaintiff was accessing the Township's computer network without
authorization.  (Defs. Ex. 8.)  Deputy Mayor Campbell did not
disclose to the other members of the Township Committee that he
had authorized the Plaintiff to perform the port scan on the
network. (Defs.' Ex. 9, Emails from Committee Members, S
Harrison, 16-18).

Chief Mabey then contacted the Plaintiff to set up a meeting
to speak with him about the incident on April 16, 2008.  (Pl.'s

4

Ex. 11.)  Prior to meeting with Chief Mabey, the Plaintiff spoke with Deputy Mayor Campbell.  (Warner Dep. 87:19-90:7).  The Plaintiff and Deputy Mayor Campbell agreed that the Plaintiff should tell Chief Mabey that Plaintiff was using the Clerk's Office computer to check his email.  (Warner Dep. 89:25-90:7.) In fact, Plaintiff did check his email on the Clerk's office computer; however, Plaintiff then proceeded to do a port scan of the Township's network to check for security issues.  (Warner Dep. 89:12-18.)  When the Plaintiff was asked by Chief Mabey about his reason for accessing the Clerk's office computer, Plaintiff maintained that he was checking his email and did not disclose to Chief Mabey that he also ran a port scan on the Township's network.  (Warner Dep. at 92:4-92:21.)

After his interview with the Plaintiff, Chief Mabey contacted the New Jersey State Police Cyber Crimes Unit on April 18, 2008, and the state police subsequently took over the investigation.  (Defs.'s Ex. 10, Deposition of Chief of Police Warren Mabey, May 9, 2011 ("Mabey Dep.") at 52:15-53:12.)  The state police and an attorney from the Gloucester County Prosecutor's office interviewed the Plaintiff and concluded that there was no criminal activity involved in this incident and that the Plaintiff "was asked to scan the network and believed he had the proper authority to do so."  (Defs.' Ex. 13, Investigation Report by the New Jersey State Police, June 24, 2008

("Investigation Report") at S Harrison 105, 107.) The state police drafted an internal investigatory report on the incident and recommended that any further action on the matter be handled on the administrative level. (Investigation Report at S Harrison 107.)

Chief Mabey then informed the South Harrison Township Committee that as a result of the State Police cyber crimes unit investigation, there would be no criminal charges filed, that the investigation was closed and that it was recommended the matter be handled on an administrative level. (Deposition of James McCall, June 29, 2011 ("McCall Dep.") at 40:15-41:9). As a result, the Township Committee voted to authorize the formation of a Special Investigative Subcommittee to investigate the incident further. (Defs.' Ex. 17, First Investigative Subcommittee Report.) Defendants James McCall and Gary Spinner were appointed as the two exclusive members of the Investigative Subcommittee. Id.

The Investigative Subcommittee subpoenaed the testimony of the Plaintiff. (Defs.' Ex. 21.) The Plaintiff asserted his Fifth Amendment privilege as to any questioning and declined to testify per the advice of his counsel. (Defs.' Ex. 22.)

The Investigative Subcommittee also attempted to obtain a copy of the State Investigatory Report by submitting a request pursuant to the Open Public Records Act, N.J.S.A. 47:1A-1, et

seq.  This request was denied by the State Police who advised the
Investigative Subcommittee that criminal investigatory records
were exempt from release under OPRA absent a court order.  (Pl.'s
Ex. AA.)

Defendants McCall and Spinner then issued a subpoena to the
New Jersey State Police requesting the production of the State
Police investigation report of the April 16, 2008 incident.
(Pl.'s Ex. CC.)  The state police responded by letter and advised
Defendant McCall that the investigation reports are not public
record.  However, the state police could provide the case status
of the report as Unfounded/Closed for a fee of $16.00.  (Pl.'s
Ex. DD.)  A money order for $16.00 was submitted to the New
Jersey State Police.  (Defs.' Ex. 25.)

Defendant McCall testified at his deposition that Defendant
Spinner actually received the State Police investigation report
under OPRA.  (Pl. Ex. D, McCall Deposition, at 106:9-17; 109:20-
25; 110:1-2.).  Defendant Spinner testified at his deposition
that McCall was the one to receive the copy of the New Jersey
State Police investigation report and Spinner further averred
that McCall provided him with a copy.  (Pl. Ex. E, Deposition of
Gary Spinner, March 16, 2011 ("Spinner Dep.")

Despite this inconsistency, it is undisputed that the
Investigative Subcommittee received an unredacted copy of the
state investigatory report on or about December 3, 2008, though

it is unclear how Defendants Spinner and McCall gained access to
this document. (Defs.' Ex. 17, "Special Investigatory Sub-
Committee Report" at S Harrison 47.)  It may have been furnished
to them by Chief Mabey, as now discussed.

It is also undisputed that Defendant Mabey obtained an
unredacted copy of the State Police investigation report in early
July 2008.  (Mabey Dep., 120:22-23; Ex. FF.)  The Plaintiff
argues in its brief that Defendant Mabey provided a copy of the
unredacted report to Defendants Spinner and McCall since their
OPRA requests were denied and they were unable to obtain the
report through subpoena.  Defendants McCall and Spinner maintain
that they received a copy of the unredacted report from the State
Police after submitting the $16.00 money order.  Defendant Mabey
was later advised by the Township Solicitor on December 18, 2008,
that any criminal investigation reports in connection with the
April 16, 2008 incident were not subject to release and were
confidential. (Pl.'s Exs. O and P.)   On December 29, 2008, the
Investigative Subcommittee consisting of Defendants McCall and
Spinner issued a report setting forth its efforts and findings.
(Defs.' Ex. 17, Investigative Subcommittee Report.)  The
unredacted State Police investigation report was attached as an
exhibit to the Subcommittee report.  (Defs.' Ex. 17.)  The
unredacted State Police investigation report included Plaintiff's
social security number, home address, date of birth, driver's

license number and personal telephone numbers.  (Defs.' Ex. 17.)

The report was issued during the course of a public Township Committee meeting on December 28, 2009.  Defendant Spinner handed out copies of the report with the incorporated exhibits, including the unredacted state police investigatory report, to the Township Committee Members and the Municipal Clerk.  (Warner Dep. at 32:10-12.  The Municipal Clerk then handed a copy of the report with the incorporated exhibits to Robert Diaz, who had been elected to the Township Committee but was not yet serving. (Defs.' Ex. 26, Deposition of Matthew Warner, Day 2, May 20, 2011 ("Day 2 Warner Dep.") at 21:19-22:1.)

Defendant McCall presented the findings of the Subcommittee report at the meeting in open session by reading the contents of the Subcommittee report.  (Defs.' Ex. 32, Plaintiff's certified responses to interrogatories propounded by Defendant James McCall at Interrogatory No. 3.)  Defendant McCall did not read the Plaintiff's social security number or driver's license number out loud, but the Plaintiff testified in his deposition that Defendants Spinner and McCall did advise the public on how to obtain the report pursuant to an OPRA request.  (Warner Dep. at 144:23-145:6.)

Following the December 29, 2008 meeting, Plaintiff made a request for the Investigative Subcommittee report on December 30, 2008.  (Defs.' Ex. 27, Warner OPRA request.)  Defendant Jeannine

Campbell also submitted an OPRA request for the Subcommittee report on December 30, 2008. (Defs.' Ex. 29, Receipt issued to Jeannine Campbell for OPRA request.) The Municipal Clerk provided a copy of the Subcommittee Report and incorporated exhibits to Plaintiff and Jeannine Campbell. (Defs.' Ex. 28 and 29.) These copies included a copy of the unredacted state investigatory report as said report was incorporated as an exhibit to the Subcommittee Report. Defendant Jeannine Campbell then made copies of the Subcommittee Report with the incorporated exhibits and gave these copies to members of the public. (Day 2 Warner Dep. at 4:22; Deposition of Jeannine Campbell, February 14, 2011 ("Jeannine Campbell Dep.") at 67:18-25; 68:1-16; 84:4-5.) Consequently, the unredacted state investigatory report with the Plaintiff's personal identifying information was distributed to members of the public.

The Plaintiff objected to the First Investigatory Subcommittee's failure to redact his social security and driver's license numbers on the state police investigation report when attaching the document to the Subcommittee Investigation Report at the next meeting of the Township Committee on January 5, 2009. The Plaintiff memorialized his objection by way of letter to the Township that same day. (Pl.'s Ex. M and GG.)

On January 8, 2009, the Municipal Clerk wrote to the Government Records Council acknowledging that the Township's

10

failure to redact Plaintiff's private information on the State Police Investigation Report prior to its dissemination violated the Open Public Records Act.  (Pl.'s Ex. N.)

During this incident and investigation, Plaintiff testified that Defendants McCall, Spinner and Bianco referred to the Plaintiff as a "hacker" and a "liar."  Plaintiff has also testified that Defendant McCall referred to the Plaintiff as "corrupt" in a public Township meeting in November, 2008. Plaintiff also avers that Defendant Mabey has referred to this incident as a "hacking incident."

After the Investigative Subcommittee report was made public, the Plaintiff was asked not to renew his term with the Township Planning and Zoning Board.  It is unclear who in the Township made the decision to terminate the Plaintiff from the Planning and Zoning Board.  At the time Plaintiff was asked not to renew his position, Charles Tyson was the Mayor of the Township and as Mayor, had the authority to make an appointment to the Planning and Zoning Board by way of resolution.  (Pl. Ex. E, Deposition of Gary Spinner, March 16, 2011 ("Spinner Dep.") at 15:12-20; 16:23-25; 17:1-4; 17:24-25; 18:1.)  Tyson testified that Defendant Spinner contacted him to arrange a meeting for the purpose of having Plaintiff resign from the Planning and Zoning Board. (Pl.'s Ex. I, Deposition of Charles Tyson, June 10, 2011 ("Tyson Dep.") at 85:6-89:17.)  Tyson also indicated the purpose of the

meeting with Defendant Spinner and a concurrent meeting with Chief Mabey was to discuss the "Matt Warner Situation" and Plaintiff's position on the Planning and Zoning Board. (Pl.'s Ex. J.)  However, in his deposition, Tyson denied having anything to do with Plaintiff's removal from the Planning and Zoning Board and denied having any knowledge as to who made the decision not to renew Plaintiff's position.  (Tyson Dep. at 25:3-25:23.)

The Plaintiff then filed the instant action against the Defendants Township of South Harrison, Jeannine Campbell, Colleen Bianco, Gary Spinner, James McCall and Warren Mabey.  In the First Amended Complaint, the Plaintiff alleges Defendants violated his right to privacy under both the Federal and State Constitutions.  The Plaintiff also brings a Fourteenth Amendment defamation claim against the Defendants.  Lastly, the Plaintiff brings a <u>Monell</u> claim for violation of federal rights against the Township of South Harrison and maintains that the municipality failed to train, supervise and/or discipline the individual defendants.

The Defendants filed an answer to the First Amended Complaint and discovery has been completed.  All the Defendants with the exception of Jeannine Campbell now move for summary judgment.

**B.  The Instant Motion**

Defendants Township of South Harrison, Mabey, Bianco, McCall

12

and Spinner move for summary judgment and urge the court to
dismiss all claims against them.[2]  First, the Defendants argue
that the Plaintiff's right to privacy claim should be dismissed.
The Defendants maintain that there is no evidence Defendants
Bianco or Mabey had any personal involvement in releasing
Plaintiff's personal identifiers contained in the state
investigatory report.  The Defendants also argue that McCall and
Spinner did not disclose or disseminate the state investigatory
report to the public; rather, the non-defendant Municipal Clerk
was responsible for releasing the report to members of the public
at the public meeting and releasing the unredacted report
pursuant to the OPRA requests filed by Plaintiff and Defendant
Jeannine Campbell.  Finally, the Defendants rely on Weisburg v.
Riverside Twp., 180 Fed. Appx. 357, 365 (3d Cir. 2006) and argue
that a plaintiff must show that the disclosure was intentional in
order to prevail on a constitutional right to privacy claim.
Here, the Defendants maintain that the evidence shows any
disclosure of Plaintiff's personal identifiers was at most
negligent and cannot form the basis of a right to privacy claim.

     Next, the Defendants argue that the Plaintiff's Monell claim
must be dismissed because the Plaintiff has produced no evidence
of an unlawful policy or custom.  The Defendants argue that a

---

     [2] Defendant Jeannine Campbell has not filed a motion for
summary judgment and has not joined the instant motion filed by
her co-defendants.

policy or custom cannot be inferred from a single instance of misconduct by a non-policy making employee, the Municipal Clerk. The Defendants maintain that none of the Defendants released the report publicly and therefore, this single instance of disclosure of personal identifiers cannot serve as a basis for finding an unlawful municipal policy or custom.

The Defendants next argue that the Plaintiff's defamation claim must be dismissed because no false statement was made by the Defendants and the decision to terminate the Plaintiff from the Planning and Zoning Board was not made by any of the Defendants in this case.  In addition, Defendants McCall and Spinner argue that their comments that Plaintiff was a "liar" or "corrupt" are entitled to legislative immunity as opinions. Defendants also argue that the term "hacker" is not defamatory. The Defendants also maintain that a name clearing hearing was made available to the Plaintiff on two occasions and the Plaintiff declined to participate.  Further, the Defendants argue that any stigma was created by the Plaintiff's filing of the instant lawsuit and not the action of the Defendants.

Finally, the Defendants argue that if the court finds the Plaintiff's claims for defamation and violation of his right to privacy are considered viable, the Defendants should be entitled to qualified immunity as their actions were objectively reasonable under the circumstances.

14

The Plaintiff, in opposition, argues that he has produced sufficient evidence to support his claims and genuine issues of material fact prevent summary judgment.  First, the Plaintiff argues in his brief that Defendants McCall and Spinner violated his right to privacy by including the unredacted investigatory report as an exhibit the publicly available Investigation Subcommittee Report.  The Plaintiff maintains that Defendants Spinner and McCall should have redacted his personal identifiers from the report prior to incorporating it into their public committee report.  By incorporating his personal identifiers into a public document, Plaintiff argues that Defendants McCall and Spinner disclosed his personal information and violated his right to privacy.  Plaintiff also argues that Defendants McCall and Spinner directed the Municipal Clerk to make copies and distribute them to the members of the public at the December 28, 2008 Township Committee meeting.  Plaintiff further argues that qualified immunity is inappropriate because McCall and Spinner's actions were clearly unreasonable.

Next, the Plaintiff contends that he has satisfied his burden to establish Monell liability because Defendants Spinner and McCall are members of the Township Committee and therefore are policy makers of the municipality.  The Plaintiff maintains that a single violation of a constitutional right by a policy maker is sufficient to trigger municipal liability and establish

an unlawful policy.  Therefore, the Plaintiff argues that his Monell claim should not be dismissed.

Finally, the Plaintiff maintains that his defamation claim remains viable.  In particular, the Plaintiff argues that Defendants McCall and Spinner made several false statements including that the Plaintiff had breached the Township network and that the Plaintiff had provided false statements and lied to law enforcement and that the Plaintiff was a hacker.  The Plaintiff argues that he has satisfied the stigma plus requirement by producing evidence that he lost his position on the Planning and Zoning Board due to the defamatory statements of the Defendants.  The Plaintiff maintains that legislative immunity is not proper in this case because the Defendants were acting in an administrative, not legislative capacity, when certain defamatory statements were made.  Finally, the Plaintiff contends that the Defendants should not be entitled to qualified immunity because their actions were not objectionably reasonable.

In addition, both parties have briefed the significance of the recent Supreme Court opinion, NASA v. Nelson, 131 S. Ct. 746 (2011).  The Defendants argue that the NASA opinion expressed uncertainty as to the nature of the right to information privacy, and therefore qualified immunity is appropriate as the right allegedly violated by the Defendants is not clearly established. The Plaintiff argues that NASA is factually distinguishable from

16

the instant action because <u>NASA</u> involved government information collection practices whereas this case deals with the public disclosure of a confidential state police investigatory report. Therefore, the Plaintiff argues that qualified immunity is not appropriate and <u>NASA</u> is inapplicable to the analysis of his right to privacy claim.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  <u>Id.</u>  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  <u>Id.</u>  The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999).  <u>See also</u> <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the

party opposing the summary judgment motion.").

**B.   42 U.S.C. § 1983 - Right to Privacy Claim**

As discussed in this court's previous July 26, 2010 Opinion, the Constitution does not expressly protect a right to privacy, and though the Supreme Court has not found such a generalized right, the Court has recognized "zones of privacy" in the various amendments to the Constitution.  C. N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 178 (3d Cir. 2005).  These zones protect two types of privacy interests: "'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'"  Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000) (quoting Whalen v. Roe, 429 U.S. 589, 599-600, (1977)).

It is the first type of privacy -- informational privacy -- that is at issue in this case.  "'The right not to have intimate facts concerning one's life disclosed without one's consent' is 'a venerable right whose constitutional significance we have recognized in the past.'"  C.N., 430 F.3d at 179 (quoting Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir. 1999)).  Analysis of a privacy claim requires two steps.  First the Court must determine whether the information is entitled to any privacy protection.  Id.

> In determining whether information is entitled to privacy protection, [the Third Circuit has] looked at whether it is within an individual's reasonable expectations of confidentiality.  The more intimate or personal the

18

information, the more justified is the expectation that it will not be subject to public scrutiny.

Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112-113 (3d Cir. 1987).  If a privacy interest is implicated, then the Court must weigh the various competing interests at issue and decide whether the disclosure was justified.  C.N., 430 F.3d at 179-80.

> The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

United States v. Westinghouse Electric Corp., 638 F.2d 570, 578 (3d Cir. 1980); see C.N., 430 F.3d at 180.

In analyzing whether any privacy interest was implicated by the disclosure of the unredacted state investigatory report, this court held that disclosure of the substance of the police report and the related investigation was insufficient to trigger the protections of the Due Process Clause.  The court noted that it is well-settled "that criminal records, including police reports, indictments, guilty verdicts, and guilty pleas, are inherently public -- not private -- documents and are thus beyond the purview of the Due Process Clause."  Nunez v. Pachman, 578 F.3d 228, 233 (3d Cir. 2009); Scheetz v. The Morning Call, 946 F.2d

19

202, 207 (3d Cir. 1991) (no privacy interest in police report
documenting incident of domestic violence, though report never
led to formal charges); see Paul P. by Laura L. v. Verniero, 170
F.3d 396, 403 (3d Cir. 1999) ("[R]ecords of criminal convictions
and pending criminal charges are by definition public, and
therefore not protected.") (internal citations omitted).

    However, the Court found that Plaintiff's privacy interests
were implicated by the disclosure of his home address along with
other detailed identifying information, such as his social
security number. See Paul P., 170 F.3d at 404 (finding that
people have some nontrivial privacy interest in nondisclosure of
their home addresses) and McCauley v. Computer Aid, Inc., 242 F.
App'x 810, 813 (3d Cir. 2007)(a person has no privacy interest in
their social security number alone).  The Court also noted in the
context of the privacy exclusion to the Freedom of Information
Act ("FOIA") that "'the extensive use of Social Security numbers
as universal identifiers in both the public and private sectors
is one of the most serious manifestations of privacy concerns in
the nation.'"  Sheet Metal Workers Int'l Ass'n v. U.S. Dep't of
Veterans Affairs, 135 F.3d 891, 898-899 (3d Cir. 1998) (quoting
Int'l Bhd. of Elec. Workers v. U.S. Dep't of Hous. and Urban
Dev., 852 F.2d 87, 89 (3d Cir. 1988)).

    The Defendants argue that summary judgment is appropriate to
dismiss the Plaintiff's right to privacy claim on three different

grounds.  First, the Defendants argue that the Supreme Court's decision in NASA v. Nelson, supra, calls into question the existence of a right to informational privacy under the federal constitution.  Next, the Defendants argue that intent is required to trigger the protections of the due process clause and in this case, the Plaintiff has not produced evidence of an intentional disclosure of his social security number and home address. Finally, the Defendants argue that the Plaintiff has not produced any evidence that any of the Defendants actually disclosed Plaintiff's private information.  Rather, the Defendants maintain that any disclosure was done by the Municipal Clerk, who is not a party to this action, or Jeannine Campbell, who is not a movant on this motion.  The Court will address each of these arguments in turn.

## 1. Effect of *NASA v. Nelson*

After the issuance of this court's July 2010 Opinion, the Supreme Court announced its decision in NASA v. Nelson, 131 S. Ct. 746 (2011).  Both parties have briefed this case and its potential impact on the court's previous reasoning which found the Plaintiff had a privacy interest which was implicated in the public disclosure of his home address, social security number and other personal identifiers.  For the reasons discussed below, the court finds that NASA does not impact or alter the court's previous finding that the Plaintiff had a privacy interest in the

21

non-disclosure of his social security number, home address and date of birth.

In NASA, the Supreme Court held that certain government inquiries conducted during a routine background check did not violate a person's constitutional right to privacy because the government had a legitimate interest in making these inquiries, the inquiries were reasonable under the circumstances, and the information was protected from public disclosure by the Privacy Act. 131 S. Ct. at 761-62. Specifically, the Supreme Court addressed whether the government could inquire about a prospective civil servant's previous treatment and counseling for illegal drug use and whether the government could ask open-ended questions of an applicant's self-designated references. Id. at 753.

In analyzing this issue, the majority expressly declined to address the continued viability of the right to privacy recognized in Whalen, supra, and Nixon, 433 U.S. 425 (1977), and stated, "we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance." Id. at 757. While Justice Scalia's concurrence, relied upon by the Defendants, casts doubt about the continued existence of the right to privacy articulated in Whalen and Nixon, the majority opinion expressly declined to address this issue as it was not raised by the parties and the

22

majority found it unnecessary to analyze such a broad issue.  The majority noted that it would utilize the approach set forth in the <u>Whalen</u> and <u>Nixon</u> decisions as "there is no evidence that those decisions have caused the sky to fall."  <u>Id.</u> at 757 n.10.

The majority also discussed the state and lower federal courts' approach to interpreting the constitutional right to privacy articulated in <u>Whalen</u> and <u>Nixon</u>.  In particular, the Supreme Court cited <u>Fraternal Order of Police v. Philadelphia</u>, 812 F.2d 105, 110 (3d Cir. 1987), the same case relied upon by this court in its previous Opinion, and discussed that many courts hold that disclosure of certain personal information should be subject to a balancing test weighing the government's interest in disclosure against the individual's interest in privacy.  <u>Id.</u> at 756 n.9.

Therefore, the court does not interpret <u>NASA</u> to cast doubt upon the existence of a constitutional right to informational privacy.  Rather, the court reads <u>NASA</u> as an affirmation that a person has a constitutional right to be free from undue disclosure of private information and that the balancing test articulated in <u>Fraternal Order of Police</u>, <u>supra</u>, is a proper way to balance the competing individual and governmental interests at stake.

     <u>2.  Intent Requirement</u>

Next, the court must address whether intent is required to

trigger a constitutional violation of an individual's right to information privacy.  The Defendants rely on Weisburg v. Riverside Twp., 180 Fed. Appx. 357 (3d Cir. 2006), in support of their argument that intent to disclose is required to trigger the protections of the Due Process Clause.  The court finds this argument unpersuasive.

In Weisburg, the Third Circuit held that an inadvertent disclosure of a person's medical information did not violate the constitutional right to informational privacy.  180 Fed. Appx. at 365.  In that case, the plaintiff claimed that his constitutional right to informational privacy was violated when a school administrator accidentally put plaintiff's medical report into an envelope with another teacher's contract.  The Third Circuit held that this negligent disclosure was insufficient to trigger the protections of the Due Process Clause.  The Third Circuit relied on Daniels v. Williams, 474 U.S. 327, 328 (1986), which held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."  Id. at 365 (citing Daniels, 747 U.S. at 328).

The Defendants maintain that Weisburg requires any disclosure of personal information be intentional in order to trigger a constitutional violation.  The court does not read Weisburg as broadly as the Defendants argue.  The Third Circuit

24

and the Supreme Court very clearly articulated that a negligent disclosure is insufficient to violate a person's right to information privacy.  These courts did not then conclude that all disclosures must be intentional in order to state a valid claim. Rather, these courts confined their holdings to negligent or accidental disclosures.

The instant matter does not involve a negligent disclosure of personal information.  The Township Committee in this case requested the state investigatory report and were told on multiple occasions that the content of this report was confidential.  It is unclear how Defendants Spinner and McCall ultimately obtained the report as the New Jersey State Police refused to disclose it and the deposition testimony of Defendants Spinner and McCall is inconsistent.  The inclusion of the state investigatory report as an exhibit to the Subcommittee's report was intentional and deliberate.  It is evident that the Subcommittee read and summarized the report in their own findings and were therefore aware of the sensitive personal information contained therein.  While the Subcommittee may not have included the state investigatory report as an exhibit with the intent of disclosing Plaintiff's social security number, home address and birth date, such specific intent is not required to trigger the protections of the Due Process Clause.  It is sufficient if evidence demonstrates that a defendant acted knowingly in

25

disclosing the private information, that is, that the official knew that the document contained such private information and that the official acted to disclose the document to the general public.  Thus, an inadvertent or negligent disclosure does not violate a constitutionally-protected privacy right.  What matters is that this disclosure was not negligent, and therefore the Plaintiff's right to informational privacy was implicated.

### 3. Analysis of Individual Defendants

Finally, the court must analyze whether the Plaintiff has produced evidence that any of the moving Defendants[3] disclosed his personal information in violation of the Due Process Clause. The court will first address Defendant Bianco, and then Defendants McCall and Spinner and finally Defendant Mabey.

As to Defendant Bianco, the Plaintiffs have presented no evidence that Bianco was involved in the disclosure of the Plaintiff's personal information in the state investigatory report.  There is no evidence that Bianco was instrumental in making the OPRA request, had any role in the receipt of the state investigatory report or made copies of the report available to the public.  Therefore, summary judgment is appropriate to dismiss Plaintiff's right to privacy claim against Defendant

---

[3] The court notes that Plaintiff's brief limits his argument to Defendants McCall and Spinner.  The Plaintiff does not address the merits of his privacy claim against Defendants Bianco or Mabey.

Bianco.

Defendants McCall and Spinner arguably had the most involved role in retrieving the state investigatory report and making it available to the public by attaching it as an exhibit to their Subcommittee report.  However, there is an issue with whether McCall and Spinner are entitled to legislative immunity.

Absolute legislative immunity applies to official actions taken within the scope of legitimate legislative activity. Schlegel v. Koteski, 307 Fed. Appx. 657 (3d Cir. 2009)(citing Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998)).  The Third Circuit has held that absolute legislative immunity extends to "members of a municipal council acting in a legislative capacity."  Aitchison v. Raffiani, 708 F.2d 96, 99 (3d Cir. 1983).  Municipal investigation committees established pursuant to N.J.S.A. 40:28-25 serve a legislative function and are considered legitimate legislative activities.  In re Shain, 92 N.J. 524, 530 (1983)("A concomitant of the power to legislate is the power to investigate for legislative purposes.").  Therefore, legislative immunity applies to bar actions against members of municipal investigative committees in their individual capacities for damages pursuant to 42 U.S.C. § 1983.

However, legislative immunity does not bar Section 1983 suits against municipal committee members in their official capacities.  This is because Section 1983 claims against board

27

members in their official capacities are "in all respects other than name, to be treated as a suit against the entity." <u>Bass v. Attardi</u>, 868 F.2d 45, 51 (3d Cir. 1989)(citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)).  A township, as a municipal entity, is not entitled to any form of immunity.  <u>Id.</u> <u>See</u> <u>also</u> <u>Aitchison</u>, 708 F.2d at 100 ("liability against the municipality is not precluded simply because the defendants were found immune in their individual capacities").

In this case, Defendants Spinner and McCall attached the unredacted state investigatory report to a public document, thereby disclosing the Plaintiff's home address, social security number and other personal identifiers to the public. Significantly, there are no reasons offered by the Defendants in their briefing or in the record which justify disclosure of Plaintiff's personal information to the public.  Therefore, a rational factfinder could conclude that Defendants McCall and Spinner violated the Plaintiff's substantive due process right to privacy.

However, their actions in attaching the investigatory report to their own Subcommittee Findings was taken in the scope of a legislative function as members of a township investigatory committee.  Therefore, Defendants Spinner and McCall are entitled to legislative immunity in their individual capacities with regard to Plaintiff's privacy claim.  Summary judgment will be

28

entered in favor of Spinner and McCall in their individual capacities.

Legislative immunity does not preclude the Plaintiff's Section 1983 claims to proceed against Defendants McCall and Spinner in their official capacities, however.  Plaintiff's official capacity claim against Defendants McCall and Spinner for violation of his right to privacy is in all respects a claim against the Township itself, which is also a Defendant in this case.  As the Township is not entitled to any immunity, Plaintiff's claims against McCall and Spinner in their official capacity may proceed.

Finally, there is an issue raised by the facts[4] that Defendant Mabey, the Chief of Police, violated Plaintiff's right to privacy by allegedly disclosing an unredacted copy of the state investigatory report to Defendants McCall and Spinner. Defendants McCall and Spinner claim they received the state investigatory report pursuant to an OPRA request to the State Police Department and the submission of $16 money order. Plaintiff claims Defendant Mabey gave them an unredacted copy of the state investigatory report which Mabey had in his possession

---

[4] This issue was not raised by the Plaintiff in his opposition as Plaintiff's brief focused solely on the liability of Defendants McCall and Spinner with regard to Plaintiff's right to privacy claim.  However, the Plaintiff implied such an argument from his Statement of Undisputed Material Facts [Docket Item 44-7] and therefore, the court finds it necessary to address it herein.

29

once the State Police declined the Township's OPRA request and
subpoena.

Viewing all facts in favor of the Plaintiff as the non-
moving party, the court finds summary judgment is appropriate to
dismiss Plaintiff's right to privacy claim against Defendant
Mabey.  Assuming Defendant Mabey was the source of the unredacted
state investigatory report, his disclosure of the report to
Defendants McCall and Spinner did not violate Plaintiff's
constitutional right to privacy.  In particular, Defendants
McCall and Spinner were not members of the public, but rather
were functioning as governmental officials vested with the
authority to investigate the April 16, 2008 incident.  The
sharing of law enforcement investigative information with other
government officials is not prohibited by the constitution, nor
should it be.  See Philadelphia Yearly Meeting of the Religious
Society of Friends v. Tate, 519 F.2d 1335, 1338 (3d Cir.
1975)(holding that the sharing of information by a law
enforcement authority with other agencies of government having a
legitimate law enforcement function does not give rise to a
constitutional violation).  Here, Defendants McCall and Spinner,
as members of the Investigative Subcommittee, were legitimately
investigating Plaintiff's involvement in the April 16, 2008
incident and consequently were entitled to have access to the
report.

In addition, there is no evidence that Defendant Mabey made any public disclosure of the unredacted state police investigatory report.  The public disclosure occurred when the unredacted report was attached to the findings of the Investigative Subcommittee.  There is no evidence in the record that Defendant Mabey was involved with this decision, authored the report or authorized its disclosure.

Finally, even assuming Defendant Mabey was wrong in disclosing the unredacted report to Defendants McCall and Spinner, he is entitled to qualified immunity.  As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions."  Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).  The Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. (internal quotations and citations omitted).

The right to prevent intra-governmental dissemination of personal information in the context of a law enforcement

31

investigation is not well established, especially after <u>NASA</u>,
<u>supra</u>.  Defendants McCall and Spinner had a legitimate reason to
ask for this information as they were vested with the authority
to investigate the April 16, 2008 incident on behalf of the
Township.  Further, there was no indication at the time Defendant
Mabey allegedly disclosed the unredacted report that this report
would subsequently be disclosed to the public.  Therefore,
Defendant Mabey's actions were objectively reasonable under the
circumstances and he is entitled to qualified immunity.

In conclusion, Plaintiff's substantive due process claim for
violation of his right to informational privacy will be dismissed
in its entirety as to Defendant Bianco and Defendant Mabey.
Summary judgment will also be granted as to the individual
capacity suits against McCall and Spinner.  However, summary
judgment will be denied as to the official capacity claims
against Defendants McCall and Spinner.

This analysis applies with equal force to the Plaintiff's
claim for violation of his right to privacy under the New Jersey
State Constitution.  It is well established that the right to
privacy is broader under the New Jersey Constitution than the
federal Constitution.  <u>See</u> <u>Burnett v. County of Bergen</u>, 198 N.J.
408, 437 (2009)(recognizing a reasonable expectation of privacy
in personal information such as social security numbers contained
in land title records); <u>State v. McCallister</u>, 184 N.J. 17, 32-33

32

(2005)(finding an individual has a reasonable expectation of privacy in bank records where such a right had not been recognized under the federal Constitution); State v. Hunt, 91 N.J. 338, 347 (1982)(finding a right to privacy in long distance telephone records held by telephone company).  Therefore, the Plaintiff's claims against Defendants McCall and Spinner in their official capacities remain viable under the New Jersey Constitution as well.

     The Township's liability will be addressed below.

**C.  42 U.S.C. § 1983 Monell Claim**

     Defendant Township argues that summary judgment is appropriate to dismiss the Plaintiff's claim against it for violating the Plaintiff's right to privacy because the Plaintiff has failed to prove an unlawful municipal policy or custom.  The Plaintiff argues that summary judgment is inappropriate as the Plaintiff has shown that the policymakers themselves, McCall and Spinner, violated his constitutional rights by disclosing his home address and social security number.

     It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978)).  As a

33

consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694; Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion).

One circumstance in which municipal liability is appropriate "occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003). "In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, and (2) whether the official's authority to make policy in that area is final and unreviewable." Hill, 455 F.3d at 245 (internal citations omitted).

In this case, it is clear that Defendants McCall and Spinner, as members of the Township Committee and the only two members of the Investigative Subcommittee, are policymakers. McCall and Spinner were responsible for conducting the investigation into the Plaintiff's involvement in accessing the Township's computer network and their findings were final and

34

unreviewable.

As discussed above, the Plaintiff has presented sufficient evidence to support a viable claim for violation of his right to privacy against McCall and Spinner because they disclosed his personal identifiers, such as his social security number and home address, to the public by attaching them to the unredacted state investigatory report to their Subcommittee Findings without any justifiable reason.  Further, Plaintiff has provided evidence which creates a genuine issue of material fact as to whether Defendants Spinner and McCall failed to supervise or train the Municipal Clerk in making the report available to the public. Defendants McCall and Spinner were aware that the contents of the investigatory report contained confidential information and had an obligation to inform the Municipal Clerk about its sensitive contents in order for the clerk to properly disseminate the report pursuant to the subsequent OPRA requests.

Therefore it is not necessary for Plaintiff to present evidence of an additional unconstitutional policy or custom, where he has sufficiently established that the municipal policymakers themselves violated federal law.  See Natale, 318 F.3d at 584.  Accordingly, the Township's motion for summary judgment will be denied.

### D. Fourteenth Amendment Defamation Claim

Finally, all the Defendants move for summary judgment

dismissing Plaintiff's constitutional defamation claim.  This court has previously explained in its July, 2010 Opinion that "reputation <u>alone</u> is not an interest protected by the Due Process Clause," and that a plaintiff must prove "a stigma to his reputation plus deprivation of some additional right or interest" in order to establish a due process claim for deprivation of a liberty interest in reputation.  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 236 (3d Cir. 2006) (citing <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976)) (emphasis in original).  Sometimes referred to as the "stigma-plus" test, in the public employment context the "stigma" is the creation and dissemination of a false and defamatory impression and the "plus" is generally termination.  <u>Id.</u>  Where a plaintiff shows "stigma-plus," he is entitled to a name-clearing hearing.  <u>Id.</u>  In order to establish the requisite stigmatizing statement, a plaintiff must show the statements (1) were made publicly and (2) were false.  <u>See</u> <u>id.</u>

Plaintiff bases his defamation claim on the following allegedly false statements made by Defendants Spinner and McCall: (1) the Plaintiff had provided false statements and lied to law enforcement; (2) the Plaintiff had breached the Township network; and (3) that the Plaintiff was a hacker.

As to the first statement, it is undisputed that the Plaintiff did not tell Chief Mabey that he ran a port scan on the computer network when he was being questioned by Chief Mabey

about his access to the Township computers on April 16, 2008.
This omission during Chief Mabey's interrogation was material and
was willfully done by the Plaintiff.  Therefore, the statement
made by Defendants McCall and Spinner that Plaintiff "willingly
lie[d] in an official Police investigation" was not false and
cannot serve as a basis for Plaintiff's defamation claim.
(Def.'s Ex. 17, Subcommittee Report.)

Similarly, statements made by Defendants McCall and Spinner
that the Plaintiff had breached the Township's network are not
inaccurate.  The Plaintiff performed a port scan on the
Township's computer network, and while the Plaintiff did not
access personal information stored on the network, the Plaintiff
still performed a scan that a member of the general public would
not be authorized to do.  The Plaintiff was not given permission
to do this scan from the Township Committee, but rather performed
the scan surreptitiously at the request of Deputy Mayor Campbell.
Plaintiff tried to conceal his breach of the network by claiming
that he had only used the Township's computer to check his own
business email.  Plaintiff's own false exculpatory story is
another reason to believe that he understood the wrongfulness of
his conduct on the Township's network.  This could be understood
as a breach and consequently, the statement that Plaintiff
breached the Township's network cannot be considered so false as
to be the basis for a defamation claim.  Though the Plaintiff did

not have the requisite criminal intent necessary for prosecution, as found by the state police investigation, this does not make Plaintiff's conduct any less a breach of the Township's network.

Finally, the statement that Plaintiff is a "hacker" is also insufficient to buttress Plaintiff's defamation claim.  It is undisputed that the Subcommittee Report does not refer to the Plaintiff as a "hacker."  There is no evidence in the record that Defendants McCall or Spinner[5] publicly referred to the Plaintiff as a hacker.  Without any evidence in the record that this statement was publicly made, it cannot serve as a basis for a defamation claim.

Therefore, as the Plaintiff has failed to sustain his burden of proof in showing Defendants Spinner and McCall publicly made false statements against him, no rational jury could find that stigmatizing statements were made, and therefore summary judgment is entered in favor of the moving Defendants on Plaintiff's defamation claim.

---

[5] The Plaintiff does not argue in his brief that Defendants Mabey or Bianco publicly made any defamatory statements.  By not responding to the Defendants' moving brief requesting summary judgment dismissing the defamation claim against all Defendants, the court finds the Plaintiff concedes that there is no evidence of defamatory conduct by Defendants Mabey and Bianco in the record and therefore will summarily dismiss the defamation claims against these defendants.

## IV.   CONCLUSION

For the reasons discussed herein, the court will grant in part and deny in part the Defendants' motion for summary judgment.  The court will partially grant the Defendants' motion for summary judgment and dismiss Plaintiff's constitutional right to privacy claim against Defendant Bianco and Defendant Mabey in its entirety.  The court will also grant summary judgment and dismiss Plaintiff's right to privacy claim against Defendants McCall and Spinner in their individual capacities.  However, the court will not dismiss the Plaintiff's right to privacy claim against Defendants McCall and Spinner in their official capacities.

The court will also deny summary judgment as to Plaintiff's claim against the Township.  As the Plaintiff has produced evidence from which a jury could conclude his federal rights were violated by the final action of policymakers, specifically Defendants McCall and Spinner, the court finds the Plaintiff may proceed on his Monell claim and need not show additional evidence of a municipal policy or custom.

Finally, the court will grant summary judgment as to Plaintiff's defamation claim.  The Plaintiff has failed to sustain his burden of proof to establish that false and defamatory statements were made by the Defendants.  Therefore, as no rational jury could conclude that stigmatizing statements were

made by the Defendants, summary judgment is appropriate to dismiss this claim.

The accompanying Order will be entered.


**June 26, 2012**                           **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge