IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MATTHEW WARNER, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 09-6095 (JBS/JS) |
| v. | : | **OPINION** |
| TOWNSHIP OF SOUTH HARRISON, et al., | : | |
| Defendants. | : | |

APPEARANCES:

Surinder K. Aggarwal, Esq.
William H. Buckman, Esq.
THE WILLIAM H. BUCKMAN LAW FIRM
Moorestown Office Center
110 Marter Ave, Suite 209
Moorestown, NJ 08057
    Attorneys for Plaintiff Matthew Warner

A. Michael Barker, Esq.
Todd J. Gelfand, Esq.
BARKER SCOTT & GELFAND
210 New Road
Linwood, NJ 08221
    Attorneys for Defendants Township of South Harrison, Gary
    Spinner, and James McCall

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

    This matter is before the Court on Plaintiff Matthew
Warner's motion for attorney fees in the above action.  [Docket
Item 81.]  Defendants South Harrison Township, Gary Spinner and
James McCall oppose this motion on several grounds, including:
the reasonableness of the hourly rate and hours expended; the

sufficiency of Plaintiff's counsel's billing records; the degree of Plaintiff's success; and whether this lawsuit was filed in bad faith thus precluding any fee award.  The Court conducted an evidentiary hearing and oral argument on March 20, 2013.

For the reasons discussed herein, the Court will grant Plaintiff's motion for attorney fees.

## II.  BACKGROUND AND PROCEDURAL HISTORY

In this case, Plaintiff Matthew Warner ("Plaintiff") performed a port scan on the Township of South Harrison's computer network at the request of Deputy Mayor Robert Campbell but without the permission of the Township Committee.  This incident resulted in a state police investigation to determine whether the Plaintiff unlawfully breached the Township's computer network.  The state police concluded that there was no criminal activity involved in this incident and that the Plaintiff was asked to scan the network and believed he had the proper authority to do so.  The matter was then referred back to the Township for any further action.  The Township formed a subcommittee comprised of Defendants Spinner and McCall to investigate the incident and subsequently the subcommittee issued its own report and findings.  Attached to this report was an unredacted copy of the state police investigation report which included Plaintiff's social security number, home address, date of birth, driver's license number and personal telephone numbers.

Defendants Spinner and McCall handed a copy of the report with the incorporated exhibits to the Municipal Clerk.  This report contained Plaintiff's unredacted personal information and was later made available to the public through Open Public Records Act requests.

The Plaintiff filed the instant action against the Defendants Township of South Harrison, Jeannine Campbell, Colleen Bianco, Gary Spinner, James McCall and Warren Mabey.  Plaintiff's intial complaint was dismissed with leave to amend, pursuant to Defendants' Rule 12(b)(6) motion.  [Docket Item 19.]

In the First Amended Complaint, the Plaintiff alleged Defendants violated his right to privacy under both the Federal and State Constitutions.  The Plaintiff also brought a Fourteenth Amendment defamation claim against the Defendants.  Lastly, the Plaintiff brought a Monell claim for violation of federal rights against the Township of South Harrison.

Defendants then filed a motion for summary judgment, which this Court granted in part and denied in part. [Docket Item 58.] The Court granted Defendants' motion for summary judgment as to the Plaintiff's defamation claim.  The Court dismissed Plaintiff's constitutional right to privacy claim against Defendant Bianco and Defendant Mabey in its entirety.  The Court also granted summary judgment and dismissed Plaintiff's right to privacy claim against Defendants McCall and Spinner in their

individual capacities.  However, the Court denied summary judgment as to the Plaintiff's right to privacy claim against Defendants McCall and Spinner in their official capacities.  The Court also denied summary judgment as to Plaintiff's <u>Monell</u> claim against the Township.

Specifically, the Court concluded that the Plaintiff produced evidence from which a jury could conclude his federal rights were violated by Defendants McCall and Spinner, who were policy makers for the Township.  The Court found that there was evidence from which a jury could find the disclosure of Plaintiff's personal information in the unredacted police report was not negligent.  The Defendants then moved for reconsideration and their motion was denied.  [Docket Item 72.]

Prior to the start of trial, Defendants made an Offer of Judgment pursuant to Fed. R. Civ. P. 68 in the amount of $15,001.00, exclusive of attorneys' fees and costs, which Plaintiff accepted.  [Docket Item 75.]  This judgment was entered without prejudice to Plaintiff's right to seek reimbursement of attorney fees and costs.  The Plaintiff now moves pursuant to 42 U.S.C. §§ 1983 and 1988 for an award of reasonable attorney's fees.  [Docket Item 81.]

## III. DISCUSSION

### A. Parties' Arguments

Plaintiff's counsel, Mr. Buckman and Mr. Aggarwal, seek $81,098.00 in fees and $15,444.65 in costs for a total award of

$96,542.65.  Mr. Buckman, the partner of the firm, seeks compensation for 14.15 hours of legal work at a rate of $400 per hour.  Mr. Aggarwal, an associate at the firm, seeks compensation for 274.32 hours of legal work at a rate of $275 per hour.

Plaintiff argues that the prevailing party in a civil rights suit is entitled to a reasonable fee award under 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Award Act of 1976. Plaintiff maintains that he is the prevailing party in this Section 1983 litigation because he accepted an Offer of Judgment against the Defendants in the amount of $15,001.00.  Plaintiff further maintains that the fee requested is reasonable, especially considering this litigation was conducted over the course of three years.

In support of this fee application, Plaintiff provided a detailed certification by William H. Buckman discussing the amount of time expended on this litigation and the measures taken by the firm to keep costs and fees down.  [Docket Item 82.] Plaintiff attached a printout of the billable professional time spent on this matter by the firm.  (Pl.'s Ex. A.)  Plaintiff also relies on two affidavits by James Katz, Esq. and Fredric J. Gross, Esq. to establish the reasonableness of Mr. Buckman's and Mr. Aggarwal's hourly rates.  (Pl.'s Ex. B.)  Therefore, Plaintiff argues that he should be awarded fees and costs in the amount of $96,542.65.

In opposition, Defendants contest Plaintiff's proposed fee award on several levels.  First, Defendants argue the Plaintiff is not entitled to any fee because the Plaintiff's success is minimal and Plaintiff's complaint was spiteful and brought in bad faith.  Defendants argue that the defamation claim was the gravamen of the Amended Complaint and consumed the greatest amount of counsel fees for both sides.  Since the defamation claim was dismissed on summary judgment, Defendants argue that any fee award based on this claim is inappropriate.

Further, Defendants argue that Plaintiff sued Police Chief Mabey and Colleen Bianco for purely political and retaliatory, spiteful reasons and therefore should be denied a fee award entirely.  Specifically, Defendants argue that any fee award in this case would be unjust considering that the instant action arose ultimately from the Plaintiff lying to Police Chief Mabey in the initial criminal investigation.  Plaintiff relies on Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Bishop v. Woodward, 2003 U.S. Dist. LEXIS 17604 (D. Del. 2003)(attached as Defs.' Ex. 8) and Dibartolo v. City of Philadelphia, 2002 U.S. Dist. LEXIS 11527 (E.D. Pa. 2002)(attached as Defs.' Ex. 9) in support of this argument.

Alternatively, if the Court were to award a fee, Defendants argue the fee should be adjusted to reflect Plaintiff's minimal success.  Plaintiff's first complaint was entirely unsuccessful and the majority of Plaintiff's amended complaint was dismissed

on summary judgment.  Consequently, Defendants contend that
Plaintiff should not be awarded fees for any work prior to the
filing of the Amended Complaint.  The Defendants maintain that
the Plaintiff prevailed on the very limited issue of disclosure
of his social security number and this claim was only viable
against the Defendant Township and Defendants Spinner and McCall
in their official capacities.  Defendants state that the
informational privacy claim was only worth $700 in damages and
Plaintiff ultimately received $15,001.00 in judgment.  Defendants
argue that a fee award in excess of $96,000 is disproportional to
the success ultimately achieved.  Defendants recommend reducing
the fee award by 90% and awarding a fee of $9,600.  Defendants
rely on <u>Migis v. Pearle Vision, Inc.</u>, 135 F.3d 1041, 1048 (5th
Cir. 1988); <u>Dannenberg v. Baladez</u>, 338 F.3d 1070, 1071 (9th Cir.
2003); and <u>Corder v. Brown</u>, 25 F.3d 833, 841 (9th Cir. 1994) in
support of this argument.

    In addition, Defendants argue that Plaintiff's counsels'
hourly rates are not reasonable.  Defendants rely on multiple
affidavits to support their contention that the reasonable market
rate for the legal services rendered in this case is $250 per
hour for Mr. Buckman and $150 per hour for Mr. Aggarwal.  (Defs.'
Exs. 10A-10E.)  Defendants further argue that the affidavits in
support of Plaintiff's requested hourly rates are insufficient
because they fail to attest that any clients actually paid $400
per hour and $250 per hour for partner and associate services.

Defendants also cite to recent District of New Jersey unpublished opinions establishing that the prevailing hourly attorney billing rate in the Southern New Jersey marketplace is $250 per hour for partners and $150 per hour for associates.

Finally, Defendants argue that Plaintiff's counsel should be compensated only for time reasonably spent. The Defendants contest many of Mr. Buckman's and Mr. Aggarwal's billing entries as being too vague and rely on <u>EEOC v. UPS</u>, 2009 U.S. Dist. LEXIS 91241, *14 (D.N.J. 2009)("[Time E]ntries, which simply contain information such 'Tel w/[Plaintiff's counsel][,]' Tel. W/client[,]' 'Letter to client' and 'Reviewing case law' are insufficient.").

Defendants also argue the Plaintiff's counsel are not entitled to fees for excessive and repetitive tasks. Defendants contend that it should have taken Plaintiff's counsel no more than 0.1 hour to review correspondence and therefore all billing entries for 0.2 hours for reviewing correspondence should be reduced to 0.1 hours.

Defendants further contend that certain tasks should be billed at a reduced rate given the nature of the work. Defendants maintain that 2.0 hours of Mr. Buckman's work should have been billed at an associate attorney's rate and 0.33 hours of Mr. Aggarwal's work should have been billed at a paralegal rate. Defendants also argue that Plaintiff's counsel's travel

time should be computed at 50% of counsel's reasonable market rate.

Therefore, Defendants argue Plaintiff's fee request should be denied entirely or alternatively, Plaintiff's fee should be significantly reduced in accordance with the above objections.

In reply, Plaintiff argues that his fee request is reasonable and should be awarded in its entirety. First, Plaintiff argues he is entitled to a fee award as he is the prevailing party and the fees requested are not excessive in light of the three year litigation history of this case. Plaintiff relies on <u>DirectTV, Inc. v. Clark</u>, 2007 U.S. Dist. LEXIS 55023 (D.N.J. July 27, 2007)(holding an award of $87,628.90 in fees and expenses was reasonable where underlying claim was $10,000 in light of defendant's litigation strategy).

Plaintiff next argues that the success achieved in this litigation was not limited because the claims all arose out of a common core of facts. In addition, Plaintiff maintains that he is entitled to an award of fees for work prior to the preparation of the Amended Complaint because the right to privacy claim, initially pled as a violation of the Privacy Act of 1974, was simply re-pled as a Fourteenth Amendment violation in the Amended Complaint. Consequently, there was no break in continuity of the litigation and all claims arose from a common core of facts. Plaintiff relies on <u>Failla v. City of Passaic</u>, 146 F.3d 149, 160 n.15 (3d Cir. 1998) and <u>Hensley</u>, 461 U.S. at 435.

Plaintiff next maintains that the requested hourly rate is reasonable in light of the experience and skill of counsel. Further, Plaintiff relies on <u>Robinson v. Jordan</u>, Civil No. 08-5863 (NLH/JS)(Pl.'s Ex. B) wherein Judge Hillman awarded Mr. Buckman fees at the hourly rate of $400 and awarded Mr. Buckman's associate fees at the hourly rate of $275. Judge Hillman found these rates to be reasonable and noted that the firm kept fees down by having an associate perform the majority of the work.

Finally, Plaintiff attaches the supplemental certification of Mr. Aggarwal in support of his argument that the time expended on this litigation was reasonable. As to the allegedly vague entries, Mr. Aggarwal, attests that to reveal more details would violate the attorney client privilege and concedes to an in camera inspection of the records by the Court if necessary. As to Mr. Buckman's 2 hours spent doing legal research for drafting the initial complaint, Aggarwal attests that Mr. Buckman made the decision that this was partner level work, not associate level work. Aggarwal next asserts that it was not excessive to review subpoenas and documents, and failure to thoroughly review these documents would have amounted to carelessness and incompetence. Further, Aggarwal asserts that Defendants have presented no evidence to support their contention that review of correspondence should have taken 0.1 hours instead of 0.2 hours. In addition, Aggarwal attests that he does not have a paralegal

and could not delegate his work to a paralegal to incur a lower fee. Finally, as to travel time, Aggarwal attests that he did not bill for travel time to attend the deposition of numerous individuals noticed by the Defendants or travel time to attend a pretrial/settlement conference with Judge Schneider.

Therefore, Plaintiff maintains that his fee request is reasonable and should be granted without any reduction.

**B. Analysis**

The award of attorney's fees and costs in this case is authorized pursuant to 42 U.S.C. § 1983 and the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. Specifically, 42 U.S.C. § 1988 provides that in any action brought pursuant to Section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . " 42 U.S.C. § 1988(b).

Under <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.</u>, 532 U.S. 598, 604 (2001), in deciding whether a party is a prevailing party, "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." The party seeking attorney's fees must "receive at least some relief on the merits of [their] claim before [they] can be said to

prevail." <u>State Teachers' Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792 (1989).  In the Third Circuit, a court must determine whether: (1) the plaintiff obtained relief on a significant claim in the litigation; and (2) there is a causal connection between the litigation and the relief obtained from the defendant.  <u>See</u> <u>Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh</u>, 964 F.2d 244, 250 (3d Cir. 1992).

Here, the Court finds that Plaintiff Warner is a prevailing party under 42 U.S.C. § 1988.  The Plaintiff obtained a judgment against Defendants Gary Spinner, James McCall and South Harrison Township pursuant to Fed. R. Civ. P. 68 in the amount of $15,001.00.  This judgment was entered only after the Plaintiff survived summary judgment on his right to privacy claim.  The Plaintiff's right to privacy claim was a significant claim in the litigation and was pursued by the Plaintiff since the filing of his initial complaint.  Without this litigation, the Plaintiff would not have obtained this $15,001.00 judgment against the Defendants.

Therefore, the Plaintiff is the prevailing party in this action.

### 1.   Is the Plaintiff entitled to a fee award?

An award of attorney's fees and costs are ordinarily appropriate under 42 U.S.C. § 1988 when a plaintiff prevails in a civil rights suit "unless special circumstances would render such

an award unjust." Hensley, 461 U.S. at 429. The Defendants argue that Plaintiff is not entitled to any fee award because his defamation claim, the alleged "gravamen" of the complaint, was unsuccessful and his claims against Defendants Colleen Bianco and Chief Mabey were dismissed in their entirety. Defendants argue that this is evidence that Plaintiff brought this lawsuit in bad faith "for purely political and retaliatory, spiteful reasons." (Defs.' Br. at 15.) In support of this argument, the Defendants rely on two unpublished district court cases, Bishop v. Woodward, 2003 U.S. Dist. LEXIS 17604 (D. Del. 2003) and Dibartolo v. City of Philadelphia, 2002 U.S. Dist. LEXIS 11527 (E.D. Pa. 2002). The Court finds the Defendants' argument is without merit and concludes that the Plaintiff is entitled to a fee award in this case.

First, the Defendants' argument that Bishop and Dibartolo support the proposition that a *prevailing plaintiff* should be denied fees where it appears that the case was brought in bad faith and the complaint was unjust, frivolous or unreasonable is unpersuasive. Both Bishop and Dibartolo analyzed whether a *prevailing defendant* who had successfully obtained summary judgment on the plaintiff's claims was entitled to an award of fees. Both cases noted that a prevailing defendant is entitled to fees under Section 1988 only when it is found that the action was brought in bad faith and the action was frivolous,

unreasonable or without foundation.  <u>Bishop</u>, 2003 U.S. Dist.
LEXIS 17604 at **5,8; <u>Dibartolo</u>, 2002 U.S. Dist. LEXIS 11527 **3-
4.  These cases did not hold that a prevailing plaintiff could be
denied fees under this standard.  Indeed, the Defendants have not
cited one case where a prevailing plaintiff who survived summary
judgment and ultimately received a judgment against the defendant
was denied an award of fees.

Here, there are no special circumstances which would render
an award of attorney's fees unjust.  While the Plaintiff's
defamation claim was unsuccessful, the Plaintiff's constitutional
right to privacy was meritorious.  This claim was not frivolous,
malicious or brought in bad faith.  It is on the basis of this
right to privacy claim that the Plaintiff will be awarded fees.
As will be discussed more thoroughly in subsection III.B.4 below,
the Court will adjust the lodestar calculation downward to
account for Plaintiff's limited success.  <u>Hensley</u>, 461 U.S. at
436.

Defendants' unsupported argument that the Plaintiff brought
this lawsuit for purely political or spiteful reasons is equally
without merit.  There is no evidence in the record to support
this bald assertion.  Further, there is no evidence that the
Plaintiff pursued this litigation for any other reason than to
seek redress for his alleged defamation and the public disclosure
of his private personal identifiers.  In addition, there are no

allegations of misconduct by the Plaintiff or his attorney in conducting this litigation either in discovery or through motion practice before the Court.

Therefore, the Court concludes that the Plaintiff is the prevailing party in this civil rights action and is entitled to an award of reasonable attorney's fees.

### 2. Are the hourly rates for Mr. Buckman and Mr. Aggarwal reasonable?

The starting point for this Court's determination of reasonable attorney's fee is calculation of the lodestar amount, which is "the number of hours reasonably expended multiplied by a reasonable hourly rate."  Penn. Env't Def. Found. v. CanonMcMill, 152 F .3d 228, 231 (3d Cir. 1998)(citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also Blakey v. Continental Airlines, Inc., 2 F.Supp. 2d 598 (D.N.J. 1998).  In applying the lodestar formula, it is imperative for a district court to "carefully and critically evaluate the hours and the hourly rate set forth by counsel."  Blakey, 2 F.Supp. 2d at 602.  Once the lodestar is calculated, the district court is permitted to adjust fees depending on the success of the party seeking fees.  Penn. Env't Def. Found., 152 F.3d at 232 (citing Hensley, 461 U.S. at 433).

The reasonable hourly rate is determined by reference to the marketplace.  See Missouri v. Jenkins, 491 U.S. 274, 285 (1989) ("We have consistently looked to the marketplace as our guide to

what is 'reasonable.'")  The attorney's customary billing rate is
the proper starting point for calculating fees.  Cunningham v.
City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985).  Indeed,
"the court should assess the experience and skill of the
prevailing party's attorney[] and compare [his] rates to the
rates prevailing in the community for similar services by lawyers
of reasonably comparable skill, experience, and reputation."
Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The
party seeking to recover attorney's fees has the initial burden
of "producing sufficient evidence of what constitutes a
reasonable market rate for the essential character and complexity
of the legal services rendered in order to make out a prima facie
case."  Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001);
L.J. ex rel. V.J. v. Audubon Bd. of Educ., 373 F. App'x 294, 296
(3d Cir. 2010).  The hourly rate to be determined is a reasonable
rate at the time of the fee application, not at the past dates
when services may have been rendered.

     If the burden is met, the party opposing the fee award can
rebut the reasonableness of the proffered hourly rate with record
evidence.  Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225
(3d Cir. 1997).  If hourly rates are disputed with actual
evidence rather than mere argument, the court must conduct a
hearing to determine the reasonable market rates.  Id.  A
district court may not set attorney's fees based upon "a

generalized sense of what is usual and proper, but 'must rely

upon the record.'" Evans v. Port Auth., 273 F.3d 346, 362 (3d

Cir. 2001) (quoting Smith, 107 F.3d at 225).

Here, the parties have submitted conflicting affidavits as

to the reasonable hourly rate for the legal services rendered in

this case.  As noted above, Plaintiff's counsel, Mr. Buckman,

seeks an hourly rate of $400 as a partner and Mr. Aggarwal, as an

associate, seeks an hourly rate of $275.  In support of this

figure, the Plaintiff submitted the affidavits of James Katz,

Esq. and Fredric J. Gross, Esq.  The Defendants allege these

affidavits are insufficient because they fail to assert what

hourly rates were actually charged to clients and paid by

clients.

The Defendants argue that the reasonable hourly rate for a

partner, such as Mr. Buckman, is $250 per hour and the reasonable

hourly rate for an associate, such as Mr. Aggarwal, is $150 per

hour.  The Defendants submit five affidavits[1] in support of their

argument:

---

[1] The Defendants' affidavits all contain the wrong case
caption.  Instead of Warner v. Township of South Harrison, these
affidavits are captioned for D'Orazio v. Washington Township. In
addition, all five affidavits were attested to on May 13, 2011.
It appears that Defendants recycled old affidavits from a
previous case.  While the Court finds these affidavits are still
relevant to the instant analysis, the Court notes that these
rates were attested to two years prior to this opinion and their
relevance is diminished when determining the reasonable rate for
2013.

- William G. Blaney, Esq., an associate at Gruccio, Pepper, De Santo & Ruth, P.A. Law Firm, opines that the prevailing market rate for attorneys litigating employment cases in the Southern New Jersey region is in the range of $125-$250 per hour.

- Arthur J. Murray, Esq., a partner at Jacobs & Barbone, P.A., opines that he is paid up to $250 per hour and the majority (80%) of his files are plaintiffs' civil litigation, equally proportioned between personal injury, employment and civil rights.

- Robert De Santo, Esq., a partner at Gruccio, Pepper, De Santo & Ruth, P.A. Law Firm, opines that the prevailing market rate for attorneys litigating employment cases in the Southern New Jersey region is in the range of $125 to $250 per hour.

- Michael Barker, Esq., a partner of Barker, Scott, Gelfand & James (Defendants' counsel in this case), opines that the prevailing market rate for attorneys litigating employment and civil rights cases in the Southern New Jersey region is in the range of $125 to $250 per hour.

- Michael J. Blee, Esq., a managing member of the law firm, Michael J. Blee, Esq., Attorney at Law, LLC, opines that the prevailing market rate for attorneys litigating employment cases in the Southern New Jersey region is in the range of $125 to $250 per hour.

Because the parties have submitted conflicting affidavits, the Court conducted a hearing to determine the reasonable market rate. At the hearing, the following affiants testified: James Katz; Frederic Gross; Arthur Murray; William Blaney; Michael Barker. After hearing testimony and reviewing the submitted affidavits, the Court makes the following findings.

First, there was extensive testimony from all witnesses regarding the complexity and unique challenges faced by plaintiffs' civil rights attorneys when the defendant is a

municipality. Many civil rights attorneys will not represent individuals suing municipalities for a variety of reasons, including political and economic difficulties. This results in a dearth of attorneys available in the Southern New Jersey area, indeed in the state of New Jersey, who specialize in this type of litigation.

Second, plaintiff civil rights litigation is distinct from civil rights defense work. Civil rights defense work is typically funded on a contract basis and payment is certain. In contrast, plaintiffs' attorneys are generally compensated through a contingent fee arrangement and consequently, payment is uncertain. When a contingent fee is awarded in state court, the state court will provide a contingency fee enhancement which enlarges the typical hourly rate and increases it to compensate for the uncertainty of payment.

Third, of all the witnesses that testified, the Court found Mr. Murray and Mr. Blaney most probative and helpful. Both Mr. Murray and Mr. Blaney made corrections to their affidavits which were submitted by the Defendants. Mr. Murray was admitted to the bar in 1995 and is rated AV in Martindale-Hubbell. Mr. Murray discussed at length that he is a partner in the Atlantic City firm of Jacobs and Barbone where his hourly rate was $250 per hour but that rate was typically enhanced in state court with a contingency fee enhancement. Further, Mr. Murray testified that

fewer than 10 attorneys in the Southern New Jersey area take plaintiff civil rights cases and even fewer take cases against a municipality. This is because the cases are often complex, usually result in the plaintiff losing and can hamper an attorney's relationship with the surrounding community. Mr. Murray testified that the partners in his firm with comparable experience to Mr. Buckman are Mr. Barbone and Mr. Jacobs. These partners have been awarded fees of $400 per hour and $475 per hour for their civil rights work.

Mr. Blaney testified that he does largely defense work representing counties and municipalities. He was admitted to the bar in 1998 and his rate is $225 per hour as an associate in Vineland, NJ, according to his affidavit. Mr. Blaney explained that he has seen awards between $300 to $375 per hour for fee applications for civil rights work in state court. He testified that a rate of $300 to $375 per hour for a litigating partner is reasonable for this type of litigation in this geographical area. He acknowledged that Mr. Barbone of Jacobs and Barbone has been awarded fees of $400 per hour in Civil Rights Act cases, but he described Mr. Barbone, against whom he has litigated, as one of the best trial attorneys in Southern New Jersey, thus warranting a higher rate than the general market rate for experienced partners.

Finally, the Court notes that while there was extensive testimony on the reasonable hourly rate for a partner, there was minimal testimony on a reasonable hourly rate for an associate for this type of litigation.  While Fred Gross declared in his affidavit that Mr. Aggarwal's rate of $275 per hour was reasonable, he did not testify in detail about this opinion at the hearing.  Mr. Gross apparently employs no associates.  Rather, Mr. Gross testified that he typically charges $250 to $500 per hour for his consulting services and did not expand on whether he employs associates or what factors contribute to an associate's reasonable hourly rate.  James Katz, Plaintiff's other affiant, did not attest to Mr. Aggarwal's rate and focused primarily on Mr. Buckman's partner rate.  He also indicated that attorneys who will take privacy cases are few in this area.  None of the Defendants' witnesses were questioned or testified about an associate's reasonable hourly rate for this type of work.[2]

Based on the affidavits and testimony described above, the Court finds that Mr. Buckman's rate of $400 per hour is

---

[2] The testimony of another witness, A. Michael Barker, was less illuminating.  He is a partner of the firm defending this case and that firm seldom handles plaintiffs' civil rights cases.  He also indicated he had not reviewed his own affidavit (from the D'Orazio case, supra n.1), before testifying in this case.  He stated he had no knowledge of fee awards to plaintiffs' attorneys in civil rights cases in this region.  He acknowledged that he charged $250/hour representing a plaintiff in an identity protection case three years ago, and he acknowledged that the fee awarded in D'Orazio was at a $250 rate.  Overall, his testimony is colored by his interest, as a partner in the firm defending this case, and by his lack of knowledge of plaintiffs' fees.

reasonable. The Court bases this finding on the testimony of Mr. Murray and Mr. Blaney. Mr. Buckman is an attorney with over forty years of experience, served as a public defender prior to entering private practice and has actively participated in several legal civil rights organizations. He is reputable in this area and has significant experience in this type of litigation. He has handled significant, successful cases under the Civil Rights Act. Mr. Murray testified as to the hourly rates charged by two attorneys in his firm with comparable reputation and experience - Mr. Barbone and Mr. Jacobs - both of whom charge between $400 and $475 per hour. Therefore, the Court will award fees to Mr. Buckman at his requested rate of $400 per hour.

The Court, however, finds that Mr. Aggarwal's requested rate of $275 per hour is unreasonable. The attorneys who testified said surprisingly little about the reasonableness of Mr. Aggarwal's $275 hourly rate, especially in view of the fact that Mr. Aggarwal's time spent was almost 20 times greater than Mr. Buckman's, so Aggarwal's fee is driving the lodestar. The five affidavits submitted by Defendants each suggested that $150 was the appropriate billing rate for an associate in this geographical area in 2011, as mentioned above. Mr. Aggarwal was admitted to practice in New Jersey in November 2007 and has been practicing with the William H. Buckman Law Firm since June 2008.

He has had less than five years of experience with the Buckman Law Firm working on these types of complex civil rights cases. When compared with Mr. Murray, who until recently charged a rate of $250 per hour, and Mr. Blaney who charges $225 per hour as an associate with 15 years of experience, Mr. Aggarwal's experience and reputation are unfledged and still in development. Mr. Aggarwal handled the challenges of this case well and with a minimum of supervision.

The Court is cognizant of the Community Legal Services ("CLS") fee structure, which has been cited approvingly by the Third Circuit Task Force on Court Awarded Attorney's fees and relied on by numerous District judges to resolve fee awards. See Court Awarded Attorney Fees, 108 F.R.D. 237 (3d Cir. 1986); for instances of Court reliance on the CLS fee structure see, e.g., Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001); Rainey v. Philadelphia Housing Auth., 832 F.Supp 127, 129 (E.D. Pa. 1993); Swaayze v. Philadelphia Housing Auth., No. 91-2982, 1992 WL 81598, at *2 (E.D. Pa. Apr. 16, 1992).

Due to the lack of testimony and record support for Mr. Aggarwal's associate rate, the Court finds it necessary to consult the CLS fee structure in determining whether a rate of $275 is reasonable for an associate of Mr. Aggarwal's experience. In the instant matter, the Court notes that CLS recommends hourly rates in 2011 of $180-225 for attorneys with 2-5 years of

experience.  <u>Attorney Fees</u>, Community Legal Services of Philadelphia, June 23, 2011, http://www.clsphila.org/Content.aspx?id=206.  The Court further notes that CLS reserves hourly rates of $275 for those attorneys with 11-15 years experience. <u>Id.</u>  While this list of rates for legal services was last updated in June 2011, the Court finds it persuasive and relevant in the analysis here.  There is no evidence that typical fees for associates have accelerated since 2011, so the CLS table from 2011 gives a fair picture of the 2013 rates being determined here and is consistent with the other evidence.

Finally, the Court notes that the District of New Jersey previously awarded an associate at the Williah H. Buckman Law Firm a rate of $275 per hour.  <u>Robinson v. Jordan</u>, 2012 U.S. Dist. LEXIS 87427 (D.N.J. June 25, 2012).  However, there is no evidence in the record or facts in the <u>Robinson</u> opinion from which the Court can determine the relevant experience of the associate in <u>Robinson</u> and whether this contributed to the reasonableness of the requested fee.

Therefore, after reviewing the evidence in the record, the testimony at the hearing, the CLS fee structure and the relevant case law, the Court concludes that a reasonable hourly rate for Mr. Aggarwal's services is $225 per hour.  This rate is at the top of the CLS recommended range and comports with Mr. Aggarwal's

developing experience as a young associate.  It is comparable to
the billing rates of several witnesses performing similar
litigation services for clients, Mr. Murray and Mr. Blaney, who
each have significantly more experience.  It is less than the
previous rate awarded in the District of New Jersey for associate
level work at the William H. Buckman Law Firm in the Robinson
case, supra, but that determination contains no analysis of why a
$275 rate was awarded, nor that the rate itself was contested.

Accordingly, the Court finds that a reasonable hourly rate
for Mr. Buckman is $400 and for Mr. Aggarwal is $225.

### 3.   Were the hours expended reasonable and is the billing record sufficient?

After the hourly rate is determined, the Court must analyze
whether the number of hours expended was reasonable.  Hensley,
461 U.S. at 433.  For this, the Court must examine the record to
determine that the hours billed are not "unreasonable for the
work performed."  Washington, 89 F.3d at 1037.  "Hours are not
reasonably expended if they are excessive, redundant, or
otherwise unnecessary."  Rode, 892 F.2d at 1183 (citing Hensley,
461 U.S. at 433).  Compensable activities include the preparation
of filing the lawsuit, background research, productive attorney
discussions and strategy sessions, negotiations, routine
activities such as making telephone calls and reading mail
related to the case, monitoring and enforcing a favorable
judgment, and travel among other things.  See City of Riverside

25

v. Rivera, 477 U.S. 561, 573 n.6 (1986); see also Maldonado v. Houston, 256 F.3d 181, 184-85 (3d Cir. 2001); Posa v. City of East Orange, Civ. No. 03-233, 2005 WL 2205786, at *4 (D.N.J. Sept. 8, 2005).  In addition, time spent drafting and litigating a fee application is compensable.  See Planned Parenthood v. Attorney General of the State of N.J., 297 F.3d 253, 268 (3d Cir. 2002).

In its evaluation, the district court has "a positive and affirmative function in the fee fixing process, not merely a passive role."  Maldonado, 256 F.3d at 184.  The district court must "go line, by line" through the billing records supporting the fee request.  Evans, 273 F.3d at 361.  As part of the determination of reasonable hours expended, attorneys seeking fees must document the hours for which payment is sought "with sufficient specificity. . . . [W]here the documentation of hours is inadequate, the district court may reduce the award accordingly."  Washington, 89 F.3d at 1037 (internal citations omitted); R.C. v. Bordentown Reg'l Sch. Dist. Bd. of Educ., Civ. No. 05-3309, 2006 WL 2828418, at *3 (D.N.J. Sept. 29, 2006).

Here, Plaintiff's counsel has attached a billing printout detailing 288.47 hours of legal work expended in this case for over three years.  Defendants make specific objections to 40.23 hours of this billing record.  Specifically, Defendants object to 20.4 hours because the description provided by Plaintiff's

counsel is too vague and lacks sufficient specificity.
Defendants next object to 7.5 hours of work as clerical and/or
excessive.  Defendants object to 0.33 hours spent by Mr. Aggarwal
which was charged at an associate level rate instead of a
paralegal level rate.   Similarly, Defendants object to 2.0
hours spent by Mr. Buckman on associate level work.  Finally,
Defendants object to 10.00 hours charged by Mr. Aggarwal for
travel time and argue that travel time should be billed at 50% of
the reasonable hourly rate.  Defendants do not object to the
remaining 248.24 hours billed by Plaintiff's counsel.

As a preliminary matter, the Court has reviewed the billing
records submitted by Plaintiff's counsel and concludes that the
uncontested 248.24 hours was reasonably expended and sufficiently
documented.

### a. Vague entries

The majority of Defendants' objections are that billing
entries totaling 20.4 hours are too vague and therefore not
compensable on this fee application.  The description of work
performed for 18.2 of these hours include numerous entries for
"Letter to Client," "Meeting with Client," and "Call to Client"
performed by Mr. Aggarwal and Mr. Buckman.  In addition, there is
one entry entitled, "Legal Research for Complaint" totaling 2.00
hours for Mr. Buckman and one entry entitled "Letter to Todd J.
Gelfand, Esq." totaling 0.20 hours for Mr. Aggarwal that

Defendants claim are too vague.  Plaintiff's counsel maintain
that to reveal any more information with regard to client
communications would infringe upon the attorney/client privilege.
Plaintiff's counsel also attaches the letter which was written to
Todd J. Gelfand, Esq., and argues that "legal research for
complaint" is not vague or insufficient.

The Court concludes the entries "Letter to Client," "Meeting
with Client," and "Call to Client" are too vague.  The Court
agrees with EEOC v. UPS, 2009 U.S. Dist. LEXIS 91241, **14-15
(D.N.J. Sept. 30, 2009), wherein the district court specifically
found that entries such as "Tel w/ client" and "Conf. w/ client"
were too vague for a fee award.   Specifically, the district
court rejected the prevailing party's argument that more
description could not be provided without breaching the attorney-
client privilege and held that a party "must also identify the
general subject matter of the communication at issue" for a claim
of privilege to apply.  Id. at *14 (citing Torres v. Kuzniasz,
936 F. Supp. 1201, 1208-09 (D.N.J. 1996)).  The court further
concluded that an entry stating "Tel. w/Rain re Protective Order"
was sufficient since it contained minimal detail about the
subject matter of the communication.  Id.

Here, it is clear the majority of the vague entries contain
no description of the subject matter of the communication.  The
Court finds that Plaintiff's counsel has not provided sufficient

detail to invoke the attorney-client privilege.  Therefore, based on the record before the Court, the Court will deny a fee award based on these entries.

Mr. Aggarwal has submitted the letter he drafted to Mr. Gelfand, and the Court is therefore able to conclude that the 0.2 hours spent on this letter was reasonable.  Mr. Buckman's 2.0 hours conducting legal research for the complaint is also reasonable for the work performed and the billing description is sufficient to award fees for this time.

Therefore, the Court will reduce the number of hours for Plaintiff's fee award by 18.2 hours which represents the time spent on billing entries entitled "Letter to Client," "Meeting with Client," and "Call to Client."   This 18.2 hour reduction represents a reduction of 14.55 hours for Mr. Aggarwal and 3.65 hours for Mr. Buckman.

### b.  Clerical/Excessive entries

Defendants challenge 7.50 hours Mr. Aggarwal spent reviewing numerous pieces of correspondence in preparation for depositions. Mr. Aggarwal billed 0.2 hours for approximately 35 entries reviewing different correspondence and supboenas in preparation for different depositions.  Defendants argue that 0.1 hours should have been expended on this task and 0.2 hours is excessive.

This objection is without merit. The difference between 0.1 and 0.2 hours is minimal and the Court cannot in hindsight conclude that Mr. Aggarwal should have spent 6 minutes reviewing a document instead of 12 minutes. Nor have the Defendants submitted any evidence in support of their objection, such as their own billing records for what they typically charge their clients when reviewing correspondence. Therefore, the Court finds that this portion of Plaintiff's counsel's fee request is reasonable.

### c. Paralegal Level Work

Defendants next argue that 0.33 hours spent by Mr. Aggarwal in preparing a notice of subpoena directed to Jeanine Campbell was paralegal work and should be charged at a paralegal rate instead of an associate level rate. Mr. Aggarwal avers that he does not have a paralegal to assist him and he could not delegate this task.

The Court cannot conclude as a matter of law that a paralegal should prepare a subpoena. Subpoenas are court documents that have legal force and effect. Therefore, it is proper for an attorney to prepare it and 0.33 hours is a reasonable time for such a task. Defendants' objections are without merit.

## d. Associate Level Work

Defendants object to Mr. Buckman's billing entry of 2.0 hours for "legal research for complaint" as being associate level work in addition to being vague.  Whether this task was more appropriate for an associate or a partner is a question of discretion.  While a partner has a higher billing rate, it is conceivable that Mr. Buckman was able to research the civil rights issues presented in this case more efficiently due to his expertise and ultimately save the client time and money.  Mr. Buckman ultimately prepared the complaint and Defendants do not object to a partner spending 3.0 hours on this task.

The Court concludes that 2.0 hours of efficient research by a partner with experience is reasonable when the alternative could have resulted in more hours and more cost to the client. Consequently, the Court rejects Defendants' objection.

## e. Travel Time

Defendants argue that Mr. Aggarwal should be reimbursed for travel time at 50% of the reasonable hourly rate.  In order to determine the rate at which an attorney may be compensated for travel time, "a court must look to the practice in the local community."  Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey, 297 F.3d 253, 267 (3d Cir. 2002). This district has previously held "the prevailing rate for travel time in New Jersey is fifty percent of the attorney's reasonable

rate." <u>EEOC v. UPS</u>, No. 06-1453, 2009 U.S. Dist. LEXIS 91241, at
*10.  A fractional rate for travel time of 25% of the normal rate
has been upheld.  <u>Smith v. Freeman</u>, 921 F.2d 1120, 1122 (10th
Cir. 1990).  Plaintiff's counsel provides no support for his
contention that travel time should be reimbursed at his full
hourly rate.  Instead, Plaintiff argues that he is not seeking
reimbursement for all of his travel, including travel to and from
depositions and travel to a pretrial/settlement conference.
Therefore, Plaintiff argues it is reasonable to reimburse him for
this minimal travel at his full hourly rate.  Private counsel use
similar billing discretion in not billing a client fully for time
spent in travel, and a reasonable fee should reflect the same
discretion.

The predominant trend in New Jersey is to reimburse travel
time at 50% of an attorney's reasonable hourly rate.  <u>EEOC v.
UPS</u>, 2009 U.S. Dist. LEXIS 91241, at *10; <u>Glass v. Snelbaker</u>, No.
05-1971, 2008 U.S. Dist. LEXIS 73012, at 20 (D.N.J. Sept. 23
2008)(Simandle); <u>Erhart v. City of Atl. City</u>, No. 00-6209, 2006
U.S. Dist. LEXIS 57709, at **22-23 (D.N.J. Aug. 17, 2006); <u>Gares
v. Willingboro Twp.</u>, No. 91-4334, 1995 U.S. Dist. LEXIS 3699, at
**19-20.  Consequently, the Court will award Plaintiff
attorney's fees for 10 hours of travel at $112.50 per hour which
is half of Mr. Aggarwal's reasonable hourly rate.

**4.    What was the degree of Plaintiff's success?**

Once the lodestar is calculated, the district court is permitted to adjust fees depending on the success of the party seeking fees. Penn. Env't Def. Found., 152 F.3d at 232 (citing Hensley, 461 U.S. at 433.) Specifically, the district court may adjust the amount, which is "primarily based on the degree of success that the plaintiff obtained." Id.

> Where a plaintiff presents different claims for relief that are based on unrelated facts and legal theories, courts should exclude fees for time expended in unsuccessful claims. However, where much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. [T]he most critical factor is the degree of success obtained. In exercising its discretion in fixing the award, the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.

Field v. Haddonfield Bd. of Educ., 769 F.Supp. 1313, 1322 (D.N.J. 1991) (internal citations, quotations, and footnotes omitted); see also Holmes v. Millcreek Twp. School Dist., 205 F.3d 583, 595-96 (3d Cir. 2000) (awarding one-fourth of fees where plaintiff prevailed on some but not all claims).

Thus, in Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990), the Third Circuit dealt with a fee application where the plaintiff, as in the present case, prevailed against several governmental officials but the court dismissed claims against others. It was proper to exclude time for work in unsuccessfully

33

defending against motions to dismiss. But even the hours spent
on claims against the dismissed defendants are compensable "if
'plaintiff can establish that such hours also were fairly devoted
to the prosecution of the claim against' the defendants over whom
plaintiff prevailed." Id. at 1185 (quoting Pawlak v. Greenawalt,
713 F.2d 972, 979 (3d Cir. 1983)). Of course, in lieu of
identifying "specific hours that should be eliminated," the court
"may simply reduce the award to account for the limited success."
Hensley, 461 U.S. at 436-37. The Hensley Court added: "The
court necessarily has discretion in making this equitable
judgment. This discretion, however, must be exercised in light
of the considerations we have identified." Id. The lodestar
should not be reduced, however, simply because a plaintiff
recovered a low damage award. Davis v. Southeastern Pa. Transp.
Auth., 924 F.2d 51, 55 (3d Cir. 1991). Similarly, a lodestar
should not be reduced in a § 1983 action "to maintain some ratio
between the fees and the damages awarded." Washington v.
Philadelphia County Court of Common Please, 89 F.3d 1031, 1041
(3d Cir. 1996).

     In this case, Defendants argue that the gravamen of
Plaintiff's complaint was his defamation claim which was
dismissed on summary judgment. Defendants maintain that the
right to privacy claim was only a minimal part of Plaintiff's
complaint. Further, Plaintiff's claims against Defendant Bianco

and Defendant Mabey were dismissed in their entirety and the individual capacity claims against Defendants McCall and Spinner were also dismissed. Defendants argue that the Plaintiff essentially prevailed against one party, the Township, on one claim, which is minimal when compared to the total relief sought. Finally, Defendants contend that since Plaintiff's first complaint was dismissed pursuant to Rule 12(b)(6), the Plaintiff should not be compensated for any work prior to the preparation of the Amended Complaint. Defendants therefore recommend reducing Plaintiff's fee request by 90% to reflect the limited amount of success obtained.

In contrast, Plaintiff argues that the right to privacy claim was interrelated to the other claims in his lawsuit and arose from a common core of facts. Consequently, Plaintiff maintains it is inappropriate to characterize his success as limited. Moreover, Plaintiff argues that his privacy claim was pled in his first complaint, though improperly brought under the Privacy Act instead of the Fourteenth Amendment, and therefore the Plaintiff should be permitted to recover fees for work performed prior to the Amended Complaint. Since all of Plaintiff's claims arose from a common core of facts, Plaintiff opposes any reduction of his fee.

There are two issues before the Court. The first is whether the Plaintiff should be compensated for work done prior to the

filing of his Amended Complaint.  The second issue is whether a percentage reduction is warranted due to Plaintiff's limited success.

While the Plaintiff's right to privacy claim was improperly brought under the Privacy Act instead of the Fourteenth Amendment, the Plaintiff should still be permitted to recover fees for work done prior to the Amended Complaint.  The Plaintiff's privacy claims in the initial complaint and the Amended Complaint arose from the same facts and consequently, legal work performed investigating and researching these claims prior to filing the Amended Complaint was integral to Plaintiff's ultimate success.  Therefore, the Court will not limit Plaintiff's fee award to work done after the filing of the Amended Complaint.

However, the Court finds that Plaintiff's success in this case was limited when measured against the claims brought, the defendants who were dismissed and the limited relief obtained and the fee award will be reduced accordingly.  The chart below delineates the Plaintiff's claims in his Amended Complaint, the defendants sued and whether these claims were successful.  This chart is helpful in determining the rate of Plaintiff's overall success because it illustrates both the number of Plaintiff's claims and the number of defendants sued successfully and unsuccessfully.

| DEFENDANT | VIOLATION OF § 1983 PRIVACY | VIOLATION OF 14TH AMENDMENT DEFAMATION | § 1983 MUNICIPAL LIABILITY AGAINST SOUTH HARRISON | N.J. STATE CONSTITUTION |
|---|---|---|---|---|
| Twp. of South Harrison | Survived summary judgment | Dismissed with prejudice on summary judgment | Survived summary judgment | Survived summary judgment |
| Jeannine Campbell | Dismissed via stipulation of dismissal | Dismissed via stipulation of dismissal | N/A | Dismissed via stipulation of dismissal |
| Colleen Bianco | Dismissed with prejudice on summary judgment | Dismissed with prejudice on summary judgment | N/A | Dismissed with prejudice on summary judgment |
| Gary Spinner and James McCall | Individual capacity claims dismissed with prejudice on summary judgment; Official capacity claims survived summary judgment | Dismissed with prejudice on summary judgment | N/A | Individual capacity claims dismissed with prejudice on summary judgment; Official capacity claims survived summary judgment |
| Warren Mabey | Dismissed with prejudice on summary judgment | Dismissed with prejudice on summary judgment | N/A | Dismissed with prejudice on summary judgment |

The Plaintiff's right to privacy claim and defamation claim arose from two distinct sets of facts. The Plaintiff's right to privacy claim arose specifically from the public disclosure of his social security number by Defendants McCall and Spinner. The Plaintiff's defamation claim dealt more broadly with the Defendants' assertions that Plaintiff was a hacker who lied to law enforcement and breached the Township network. This is sufficiently distinct from the public disclosure of Plaintiff's social security number that a failure to reduce the lodestar would overcompensate the work reasonably necessary to achieve Plaintiff's limited success.

Further, Plaintiff's amended complaint alleged claims against six defendants: Colleen Bianco, Jeannine Campbell, Warren Mabey, James McCall, Gary Spinner and the Township of South Harrison. Plaintiff's right to privacy claim was ultimately successful only against the Township, and McCall and Spinner in their official capacities. The remaining claims against McCall and Spinner as well as all claims against Bianco and Mabey were dismissed with prejudice on summary judgment. A voluntary stipulation of dismissal was filed as to the claims against Jeannine Campbell. [Docket Item 77.] Accordingly, Plaintiff's success when measured by the number of parties whose claims remained viable was also limited, and counsel's efforts to keep claims alive were unsuccessful except for that involving disclosure of personal identifiers.

The Court must decide what percentage reduction is appropriate to properly reflect Plaintiff's limited success in light of these factors. Defendants' suggestion of a 90% reduction is inappropriate because it minimizes the three-year litigation history of the case as well as Plaintiff's ultimate success on his privacy claim, which was at least somewhat interrelated with the many unsuccessful claims.

The Court finds a fee reduction of 35% is appropriate. Plaintiff's right to privacy claim and <u>Monell</u> claim were approximately half of the Amended Complaint and Plaintiff was successful against three of the six defendants. In addition, while both claims relied on different facts, the facts arose from the same general occurrence and discovery was not easily divisible by claims or parties. The fee reduction should also reflect the degree to which the amended complaint cast a rather broad net and came up with few fish. Consequently, a 35% reduction is appropriate and properly reflects Plaintiff's degree of success.

### C. Summary and Estimated Fee

The Plaintiff is the prevailing party in this litigation and is entitled to an award of reasonable attorney's fees under 42 U.S.C. §§ 1983 and 1988. Special circumstances do not exist which would make an award of fees unjust or warrant denial of attorney's fees in this case. Plaintiff's counsel seek compensation for a total of 288.47 hours with 274.32 hours performed by Mr. Aggarwal and 14.15 hours performed by Mr. Buckman.

The Court finds that Mr. Buckman's reasonable hourly rate as a partner is $400 and Mr. Aggarwal's reasonable hourly rate as an associate is $225.  A total of 248.24 hours was reasonably expended and sufficiently documented by Plaintiff's counsel to justify a fee award.

The Defendants dispute the remaining 40.23 hours billed by Mr. Buckman and Mr. Aggarwal.  The Court finds that 12.03 hours of these contested billing entries were reasonably expended.  Ten hours representing Mr. Aggarwal's travel must be compensated at 50% of his hourly rate which is $112.50 per hour.  The remaining 18.2 hours, of which 14.55 hours was spent by Mr. Aggarwal and 3.65 hours was spent by Mr. Buckman, must be stricken as the billing entries are too vague to support a fee award.

This results in Mr. Aggarwal being compensated for 249.77 hours at $225 per hour ($56,198.25).  Mr. Aggarwal will also be compensated for his travel time of 10 hours at $112.50 per hour ($1,125.00).  Mr. Buckman will be compensated for 10.5 hours at $400 per hour ($4,200).  This results in a lodestar amount of $61,523.25.

This lodestar must next be reduced to reflect Plaintiff's degree of success.  After reviewing the litigation history and billing records of this case, a reduction of 35% is warranted to reflect Plaintiff's limited success in this litigation.  This results in a total fee award of $39,990.11.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiff's motion for attorney fees will be granted.  Plaintiff's counsel will be awarded a fee of $39,990.11.  The accompanying Order will be entered.


<u>**June 27, 2013**</u>                           <u>**s/ Jerome B. Simandle**</u>
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge